*A. C. Downey* and *S. Carter,* for appellee.

---

Souffrain and Another *v.* McDonald and Another.

Lease.—Privilege to Lessee to Purchase.—A leased to B and C a tract of land for the period of two years, at a stipulated rent. The lessees were to build certain fences, and were to have an election to purchase the property, at any time before the expiration of the lease, at a price named in the contract, a part of which was to be paid when they should declare their election to purchase, and the residue to be secured by notes and mortgage. Suit by B and C, alleging that within the term of the lease, they had elected to purchase and had tendered to A the money to be paid in hand, and their notes and a mortgage for the residue.

*Held,* that no written notice of an election to purchase was necessary, the tender of the money and the notes and mortgage being a sufficient offer of performance.

*Held,* also, that if A had accepted the offer to perform and executed the deed, the mortgage, though made before B and C acquired title, would have been valid.

*Held,* also, that the assignment by B to C of his interest in the contract would not affect the right to enforce a conveyance, their joint notes having been tendered for the purchase money.

*Held,* also, that the offer to sell formed a part of the consideration of the contract, and could not be withdrawn by A, even before notice of an election to purchase.

APPEAL from the *Wayne* Circuit Court.

ELLIOTT, J.—This was a suit by *Samuel L. McDonald* and *George W. Russell* against *Eleanor Souffrain* and *Catharine Souffrain,* for the specific performance of a written contract,

signed by all the parties, which is in substance as follows: It bears date on the 27th day of *January*, 1864, and provides that said *Eleanor* and *Catharine*, "in consideration of the yearly rents and covenants hereinafter reserved, have leased, demised and rented unto the said *McDonald* and *Russell*, their executors, administrators and assigns," all of lot number eight in that part of the city of *Richmond* laid out by *Bickle* and *Laws*, in *Wayne* county, *Indiana*, with the buildings and improvements thereon, from the 27th day of *January*, 1864, to the 27th day of *January*, 1866, at a rent of fifteen dollars for the first year, to be paid at the expiration of said year, and twenty dollars for the second year, to be paid at the end thereof. *McDonald* and *Russell* covenant to pay said rent as the same becomes due and payable, and also agree to "erect and build" a fence across the south end of said lot, and furnish the materials for the same. And it is further agreed, by and between the aforesaid parties, that the said *McDonald* and *Russell* may, at any time within the two years of said lease, purchase the said lot number eight, before mentioned and described, of the said *Eleanor* and *Catharine Souffrain*, for the sum of one thousand dollars, in payments, as follows, to-wit: two hundred and fifty dollars at the time of said purchase, or when the deed to said lot shall be delivered to said *McDonald* and *Russell;* two hundred and fifty dollars, with interest from the date of said deed, one year from the date of said deed; two hundred and fifty dollars, with interest from the date of deed, two years from the date of said deed; and two hundred and fifty dollars, with interest from the date of said deed, three years from the date of said deed. And the said *McDonald* and *Russell*, in case they purchase said lot, are to secure the deferred payments by giving to said *Eleanor* and *Catharine* a mortgage thereon; and in case they so purchase, then the rent mentioned in said lease shall cease, from the time of such purchase, and the lease shall be void from that time. And further, in case the said *McDonald* and *Russell* do not purchase, the fence mentioned in said lease, which they are

to erect, shall remain on said lot, and be the property of said *Eleanor* and *Catharine.*

It is averred in the complaint that said *Eleanor* and *Catharine* were seized in fee of said lot, and that the plaintiffs entered into possession thereof under said agreement; that they furnished the materials and erected the fence across the south end of the lot, in accordance with said agreement, and, at the end of the first year, paid said defendants fifteen dollars, the first year's rent; that on the 15th day of *December,* 1865, and before the expiration of said two years, they notified the defendants of their determination to pur-. chase said lot, according to the terms of said agreement, and then paid to them twenty dollars, the rent for the second year, and at the same time tendered to said defendants the sum of two hundred and fifty dollars of said purchase money, and also three several promissory notes, executed by the plaintiffs, for two hundred and fifty dollars each, payable according to the terms of said agreement, together with a mortgage, executed by them and their wives, to said defendants, on said lot, to secure the payment of said notes, and thereupon demanded of the defendants a deed of conveyance for said lot; but the defendants refused to accept said money, notes and mortgage, and also refused to execute such deed. The money, notes and mortgage were brought into court for the plaintiffs.

The defendants answered in four paragraphs, as follows:

1. That at the time of making said agreement, no consideration was given or paid by the plaintiffs to the defendants for the privilege of purchasing said lot, nor was there any mutuality in said contract, as said plaintiffs were not under any obligation to purchase the lot; and that before said money, notes and mortgage were tendered to them by the plaintiffs, defendants notified the plaintiffs that they withdrew the offer to sell the lot contained in said agreement.

2. That there was no consideration for the privilege of purchasing the lot, and that on the 8th of *December,* 1865, said *McDonald,* for a valuable consideration, by a written

assignment on said agreement, transferred all his interest therein to said *Russell;* that after said transfer, said *McDonald* having thereby put it out of his power to comply with the terms of the agreement as to the purchase of the lot, the defendants notified said *Russell* that they withdrew the offer to sell, and that on the day of said alleged tender of said money and mortgage, *Russell* procured said *McDonald* to cancel said assignment.

3. The same as the first, with the additional averment that the plaintiffs did not offer in writing to purchase said lot.

4. The same as the second, with the additional averments, that at the date of said · agreement the fence on the south end of the lot was torn down; that the plaintiffs were the keepers of a livery stable, and wanted the use of the lot to turn horses on occasionally, and proposed to make said fence and pay said fifteen dollars the first year, and twenty dollars the second year, all as rent for said lot; that the privilege of purchasing the lot was an after-thought of the plaintiffs just before the agreement was drawn, and was put into said agreement without any consideration whatever, the building of the fence being a part of the consideration for the lease; that the fence was only fifty feet in length, and cost but little, and that at the date of said agreement the lot was only worth one thousand dollars, but had increased rapidly in value, and was worth, at the date of said tender, one thousand five hundred dollars.

The court sustained a demurrer to each paragraph of the answer, and, the defendants declining to answer further, rendered a final judgment for· the plaintiffs. To all of which rulings the defendants excepted, and appeal to this court.

The action of the court in sustaining the demurrers to the several paragraphs of the answer presents the only question in the case.

It is urged in argument by the counsel for the appellants, that the complaint is defective, and therefore that the de-

murrers should have been sustained to it, instead of the answer, as a bad answer is sufficient when pleaded to a bad complaint. The objection urged to the complaint is, that it fails to show that the plaintiffs below notified the appellants, in writing, of their determination to purchase the lot, and that a parol acceptance of the offer to sell contained in the written agreement did not bind the plaintiffs, under the statute of frauds. This position, as applied to the facts stated in the complaint, cannot be sustained. The complaint alleges that the plaintiffs tendered to the appellants, before the expiration of the lease, two hundred and fifty dollars of the purchase money, and also their notes for the residue, payable at the times required by said agreement, and a mortgage on the lot to secure their payment. This was not a mere verbal acceptance of the offer, but an actual tender of performance on their part of the terms of the purchase, and no other or further acceptance of the offer to sell, or notice thereof to the appellants, was necessary. But it is insisted that the tender of the mortgage amounted to nothing, as the plaintiffs had no title to the lot mortgaged, and we are referred to *Parker* v. *McAllister*, 14 Ind. 12. It is true that the plaintiffs were not invested with the legal title at the time of making the tender, but the contract evidently contemplates that the payment of two hundred and fifty dollars by the plaintiffs, the execution of the deed to them by the defendants, and the execution of the notes and mortgage by the plaintiffs to the defendants, should be concurrent acts, and if, upon the offer of performance by the plaintiffs, the defendants had accepted the notes and money, and executed the deed, the delivery of the mortgage at the same time would have rendered it valid. But if it were otherwise, it could not aid the appellants, as in that case the tender of the notes and money would be all that could be required of the plaintiffs until the defendants executed to them the deed. The offer to deliver the mortgage before the execution of

the deed, was evidence of the plaintiffs readiness to perform, as soon as the deed should be delivered.

The next question presented is, was either of the answers sufficient to bar the action? The only new matter alleged in the answer requiring notice is, that *McDonald*, for a valuable consideration, assigned his interest in the agreement to *Russell;* and that thereafter, and before they determined to purchase the lot, or tendered to the appellants the money, notes and mortgage, and while *Russell* still held the agreement, under said assignment, the appellants notified them that the proposition, or offer to sell, was withdrawn. The assignment by *McDonald* of his interest in the agreement to *Russell* could not affect the question. If they were entitled by the agreement to make the purchase, the appellants, at most, could only require their joint notes for the unpaid purchase money, secured by a mortgage on the lot, and it could make no difference to them that the deed should be made to *Russell* alone. But the cancellation of the assignment, before the acceptance of the offer and the tender of performance, restored the parties to the same relation as before it was made.

It is contended by the appellants counsel, however, that the offer to sell, contained in the agreement, is distinct from the lease of the lot, and, until accepted by *McDonald* and *Russell*, was without mutuality or consideration, and might be withdrawn at any time before notice of its acceptance, and therefore that the allegation in the answer that the offer to sell was so withdrawn, before the acceptance or tender of performance by *McDonald* and *Russell*, constituted a good defense to the action. Numerous authorities are cited upon the point that a mere offer to sell may be withdrawn at any time before it is accepted. That such is the law cannot be controverted. But the agreement under consideration is not a mere naked proposition to sell the lot, nor can it be regarded as separate and distinct from the lease of the lot and the consideration stated in the agreement. The stipulations, on the one side, to lease the lot for

a period of two years, with the right of the lessees, within that time, to purchase the same at the price and on the terms stated in the agreement, and, on the other, to pay the rent agreed upon and to erect the fence, must be considered as constituting one entire agreement, each particular stipulation forming an inducement thereto. The agreement to pay the rent and build the fence must be deemed to have been made in consideration, as well for the privilege of becoming the purchasers of the lot, as for its use.

The case of *Stansbury* v. *Fringer*, 11 Gill & Johns. (Md.) 149, seems to be precisely in point. There, *Stansbury* was the owner of a half section of land in *Richland* county, *Ohio*, and agreed that *Fringer* might enter upon said land, and enjoy the same for the term of twelve years, for the following consideration, viz., *Fringer* agreed to build a house on the land, and to pay the taxes thereon during said term, and *Stansbury* further agreed that should said *Fringer* think proper to purchase said land, at any time within the said term, and pay him therefor the sum of six hundred dollars, he would make to *Fringer* a good and sufficient deed for the land. *Fringer* went into possession of the land in 1828, built the house and paid the taxes thereon until 1836, when he determined to purchase the land for six hundred dollars, the price stipulated in the agreement, and tendered said sum to *Stansbury* and demanded a deed, which the latter refused to make. *Fringer* filed a bill for specific performance, which was decreed by the court. It was insisted in that case, as it is in this, that there was no mutuality or consideration for the promise to convey, and that it was not therefore such a contract as a court of equity would require to be specifically performed. CHAMBERS, J., in delivering the opinion of the court, said: "Where a contract consists of several distinct and separate stipulations on one side, and a legal consideration is stated on the other, it must be considered that the entire contract was in the contemplation of the parties in each particular stipulation, and formed one of the inducements

therefor, and no one stipulation can be supposed to result from, or compensate for, the consideration, or any part of it, exclusive of other stipulations, unless the parties have expressly so declared; and this will be the case, whether the consideration be a sum of money to be paid in gross, or a specific act to be performed, or several payments in money, or several acts to be performed."

In *D'Arras* v. *Keyser*, 26 Penn. St. R. 249, *Keyser*, in 1849, leased the premises in dispute to *D'Arras*. The lease contained a clause that *D'Arras* or his wife should have the right and privilege of purchasing the premises for the sum of two thousand five hundred and seventy-five dollars, at any time within twelve months from the date of the agreement, and upon the payment of said sum, and all arrears of rent, *Keyser* covenanted to execute a deed for the premises. *D'Arras* occupied the premises and paid the rent under the lease until he died, and his wife then paid it for some time. After the expiration of the time limited by the agreement for the purchase, the widow of *D'Arras* gave notice to *Keyser* that she was prepared to pay the money and desired to have the premises conveyed to her. *Keyser* refused to convey, claiming that the time limited for perfecting the purchase had expired. The court held that she was entitled to a conveyance. See, also, *Douglass* v. *Whitmore*, cited in 7 Vesey, jr., 437, and in 14 *id.*, 596; *Daniels* v. *Davison*, 16 Vesey 249; Hilliard on Vendors, §§ 7, 8, 9, p. 265. We think the answer presents no defense to the complaint, and the demurrers were therefore correctly sustained.

The judgment is affirmed, with costs.

*W. Bickle*, for appellants.

*J. P. Siddall*, for appellees.