CASES ARGUED AND DETERMINED

IN THE

# SUPREME COURT OF ERRORS

OF THE

# STATE OF CONNECTICUT.

---

### JAMES ROBERTS *vs.* PHILO B. NORTON.

Third Judicial District, New Haven, January Term, 1895. ANDREWS, C. J.,
TORRANCE, FENN, BALDWIN and HAMERSLEY, Js.

The plaintiff alleged that a certain transaction between himself and the
defendant, evidenced by a written agreement of conditional sale, was in
fact a loan and mortgage, or pledge, and was so intended and under-
stood by the parties; and prayed that he might be permitted to redeem
the property upon payment of the amount equitably due the defend-
ant. The trial court, upon competent evidence, found that there was
no loan, mortgage, or pledge; that the transaction was an absolute pur-
chase of the property in question by the defendant, with an option to
the plaintiff to buy the same for a specified sum within a limited time;
and that the plaintiff had, without legal excuse, failed to comply with
the terms of such option within the time therein limited. *Held* that
upon such finding, which this court could not disturb, judgment was
properly rendered for the defendant.

[Submitted on briefs January 15th—decided February 8th, 1895.]

SUIT to redeem a certain stallion and for other equitable
relief, brought to the Superior Court in New Haven County
and tried to the court, *Prentice, J.;* facts found and judg-
ment rendered for the defendant, and appeal by the plain-
tiff for alleged errors of the court. *No error.*

The case is fully stated in the opinion.

*Henry C. Baldwin*, for the appellant (plaintiff).

I. The case presents all the elements going to show the

relation of borrower and lender. Roberts wanted to pay the $675, so he could save the $1,400 he had already put in. The defendant advances the money paying that debt, and then says, over his own signature, I will keep this horse, and any time inside of three months you can reclaim it by paying $675, with interest and $20.00 per month for the keeping; thus distinctly recognizing the plaintiff's right to redeem, or his equity in the pledged property. The stallion could be mortgaged. 2 Bouv. Law Dict., 178. The agreement provided for the payment of interest, as compensation for the withholding the money. And it provided a time when a forfeiture could be declared, as in ordinary mortgages. If it was a mortgage then, it was a mortgage when the suit was brought; for it is a maxim in equity that "once a mortgage, always a mortgage."

II. Forfeitures are abhorrent, and not to be encouraged. In the case of *Walker* v. *Wheeler*, 2 Conn., 301, Judge SWIFT says: "It is a plain rule, that where a condition has not been performed by the time, and compensation can be made, a court of equity will interpose and grant relief." Our courts are all courts of equity now. See § 6, Practice Act. If we treat this transaction as an agreement to purchase, we still maintain that time was not of the essence of the contract, and that in equity we had a right to claim the property on the tender of the purchase price, and interest, even though a week had elapsed. *Pritchard* v. *Todd*, 38 Conn., 413; *Lounsbury* v. *Beebe*, 46 id., 291; *Omaha Book Co.* v. *Sutherland*, 10 Neb., 334; *Scott* v. *Henry*, 13 Ark., 112.

*William H. Williams*, for the appellee (defendant).

I. The right of redemption necessarily implies and involves the prior relation of mortgagor and mortgagee, or pledgor and pledgee. It is an incident to this relation. If no such relation between the parties ever existed in fact, then there could be no right to redeem.

The plaintiff had never become the owner of the horse, inasmuch as he had failed to perform his part of the condi-

tional contract of sale. Such contracts are upheld in this State by a long line of decisions. *Marsh* v. *Forbes*, 15 Conn., 394; *Hine* v. *Roberts*, 48 id., 267; *Lewis* v. *McCabe*, 49 id., 141; *Loomis* v. *Bragg*, 50 id., 228; *Appleton* v. *Norwalk Library Corporation*, 53 id., 4; *Hotchkiss* v. *Higgins*, 52 id., 210; *Cooley* v. *Gillan*, 54 id., 80; *Warren Mfg. Co.* v. *Norwich Bleaching Co.*, 56 id., 70; *Mack* v. *Story*, 57 id., 414; *New Haven Wire Co. Cases*, 57 id., 352; *Beach's Appeal from Commissioners*, 58 id., 474; *Bank of Webster* v. *Alton*, 60 id., 407.

II. There was no right of redemption which a court of equity would recognize upon the facts found as between the plaintiff and Lilley. The plaintiff held simply a contract of " option to purchase said horse," which he could exercise within three months from February 10th, or not, at his pleasure; it was no contract which the defendant could in any way enforce. The defendant could not call upon the plaintiff within three months and insist that he exercise his option to purchase.

If the complaint could be construed to be for a specific performance, as in the case of *Phipps* v. *Munson*, 50 Conn., 267, then that case furnishes sufficient authority to justify the ruling of the Superior Court in this case. " A specific performance cannot be decreed because the plaintiff failed to pay the money within the time, and time is material. It is of the essence of the contract."

FENN, J. The amended complaint states, as the ground of the plaintiff's action, that in April, 1891, he received a certain stallion " Harkaway " from one Hayden, under a written agreement of conditional sale, to remain the property of said Hayden until the sum of $2,000 with interest, was fully paid; then the title to vest in the plaintiff; that in pursuance of this agreement he paid Hayden $1,500; that afterwards one Lilley purchased of said Hayden his interest in said stallion, and on February 10th, 1893, surrendered to the plaintiff said agreement of conditional sale, the plaintiff still being in possession of said stallion, and the balance due from the plain-

tiff thereon being $675; that the defendant, at the plaintiff's request, advanced said sum to said Lilley, upon the express condition that the plaintiff and said Lilley should give him a bill of sale of said stallion, of which he was at the same time to take and retain possession, upon and subject to the conditions set forth in a certain writing then executed, which provided that whereas the defendant was the owner of said stallion, which the plaintiff was desirous of purchasing, the defendant agreed to sell and deliver said horse to the plaintiff, at any time within three months from said date, on payment to him within said period of the sum of $675, with interest thereon, from said date to time of payment, and on payment of an additional specified sum for the keeping of said horse; but if the plaintiff failed to pay said sum or any part thereof within said period of three months, the plaintiff should forfeit any and all sums paid under said agreement, and said agreement should be null and void; that it was understood between the plaintiff and defendant that said sum advanced said Lilley was intended as a loan to the plaintiff, and that said stallion was to be held simply as security for said sum, the interest thereon, and the expense of keeping said horse; that in pursuance of said agreement, the plaintiff delivered to the defendant said stallion, with the full understanding between the parties that the same was in the nature of a pledge or mortgage, the plaintiff being the owner of said stallion; that the defendant retained it as such security until May 9th, 1893; that on said day the plaintiff solicited and obtained from the defendant an extension of one week from the 10th of May, 1893, in which to redeem said stallion; that on May 17th, 1893, he went to the defendant's place of business, with sufficient money for, and for the purpose of, such redemption, but failed to find the defendant; that on May 18th, 1893, he went again, made tender, and demanded that the defendant should deliver to him the stallion and take the money; that this the defendant declined to do; and that the value of the stallion is $2,000. The plaintiff claimed equitable relief in the nature of a decree for redemption, also damages for detention after tender.

The facts found by the court differ essentially from those alleged. It was found that the entire sum paid by the plaintiff to Hayden was $1,400, and that this was not paid in the amounts or at the time stipulated. After Lilley became the owner of the interests and claims of the said Hayden, he demanded payment of the balance long past due, on penalty of immediate taking possession by him of the stallion as his property. Nothing was paid. Lilley afterwards offered to sell to the plaintiff his interest for $675, and the plaintiff thereupon went to the defendant, explained the situation and made known his wishes. As a result it was agreed that the defendant should buy and become the owner of the horse, paying therefor said sum of $675, demanded by Lilley, if the plaintiff could arrange so that the defendant could have good and absolute title ; and that the defendant should then give the plaintiff an option to purchase said horse from the defendant at any time within three months, upon the payment of $675, together with interest on said sum, and the keeping. This agreement was, on February 10th, 1893, effectuated ; Lilley and the plaintiff joined in a bill of sale to the defendant, Lilley surrendering to the plaintiff the contract with Hayden. The defendant paid Lilley the $675. This being done the defendant executed and delivered to the plaintiff the contract recited in the plaintiff's complaint. At the time of these transactions it was fully understood, and intended by both the plaintiff and defendant, that the defendant, by virtue of the bill of sale and the payment to said Lilley, then and there should, and did, become the absolute owner of said horse. It was not understood or intended between them that by reason of any of said acts the plaintiff should, or did, in any way become indebted to the defendant, and he did not so become indebted. The plaintiff, pursuant to the sale aforesaid, delivered the horse to the defendant in whose possession it has since remained. No subsequent agreement, written or verbal, was ever made between the parties, varying in any way the terms of the agreement mentioned, or extending the time in which the plaintiff might purchase said horse as therein provided. The only time the plaintiff ever

offered to pay the defendant anything was on May 18th, 1893, when he made a tender of $753, which the defendant refused, stating that the plaintiff had failed to comply with the terms of the contract. The horse, on February 10th, 1893, was of uncertain value. Its fair market value, which depended largely on circumstances, was about $675. The court rendered judgment for the defendant.

The plaintiff states a case which is indeed one of hardship; the proof of which would entitle him to relief from a court of equitable jurisdiction. His misfortune is that he has entirely failed to establish such a case as he alleges, to the satisfaction of the trial court. If the court below, upon the facts found, had rendered judgment in his favor, such judgment would not have corresponded with, or been supported by, the allegations of the complaint. The transaction relied upon was a mortgage or pledge, and the claim for a judgment permitting redemption on payment of the indebtedness secured. The court found there was never any mortgage or pledge, and no indebtedness; hence there could be no such judgment as demanded. This finding we cannot disturb. Indeed, the further fact found, that the plaintiff never owned the stallion, having failed to acquire title under the original sale, precludes the possibility of a mortgage or pledge.

The case of *Phipps* v. *Munson*, 50 Conn., 267, seems, on all questions involved, directly in point, and decisive of the present case. The statement there made (p. 270), that the very purpose of the agreement to reconvey was to give to the plaintiff, instead of an equity of redemption, a right to purchase for a given price within a limited time, is equally applicable here. Such being the object of the parties, it was not in the power of the court below, and surely it is not our province, to place an artificial or technical construction upon their act, for the purpose of defeating their intent.

Regarding the transaction as a purchase by the defendant with an option to the plaintiff to purchase from him " for a given price within a limited time," it is clear that, independently of the difficulty of granting a decree for specific per-

formance upon the complaint as it stands, the plaintiff is ·not, on the facts found, entitled to such relief. Time has, by this court, been held to be of the essence of such a contract. *Phipps* v. *Munson, supra.* This should be so, at least to the extent of preventing a plaintiff from successfully inviting a court to ignore his laches, for which he shows no excuse, or palliation, and regarding which no blame attaches to the opposite party. The plaintiff doubtless recognized this, for he stated in his complaint that he requested an extension of time, and that the defendant granted it; but the court has expressly found otherwise.

There is no error in the judgment complained of.

In this opinion the other judges concurred.