# ANTHONY P. XANTHAKEY ET AL. *vs.* ELLEN E. HAYES.

Third Judicial District, Bridgeport, October Term, 1927.

WHEELER, C. J., MALTBIE, HAINES, HINMAN and BANKS, Js.

In a suit by the plaintiffs for an injunction ordering the defendant, their landlord, to execute a renewal of the lease as provided by the terms thereof, the defense that the plaintiffs were not entitled to such equitable relief because of their own violation of certain covenants contained in the lease, should have been specially pleaded.

During the term of the original lease, the plaintiffs, acting under an agreement with H, organized and subscribed to all of the capital stock of a corporation authorized to conduct a shoe store and, as soon as the organization was completed, sublet a portion of the premises to the corporation and sold for cash all but two of the shares of stock to H and his manager. *Held* that this was a literal compliance with the provision of the lease permitting them to "sublet said premises in whole or in part to a corporation or corporations which they might organize"; and that under all the circumstances, including the defendant's failure to object to similar subleases to other corporations similarly organized, the plaintiffs' conduct in this instance was not so objectionable as to preclude them from seeking equitable relief in the present action.

The mere fact that one of the sublessees, without the knowledge or consent of the plaintiffs, permitted a third party to occupy space in its store for the sale of flowers during a week preceding an Easter Sunday, did not constitute a violation of the lease, especially in view of the fact that the defendant made no complaint or objection, continued to accept rent, and, by a letter warning the plaintiffs against future transgressions in the matter of subletting, expressly waived any that had already occurred.

The defendant further claimed that the plaintiffs had committed waste by leaving the building exposed to the elements for about fifteen months after it had been partially destroyed by fire. *Held* that this claim had been conclusively adjudicated against the defendant in a prior action of summary process in which it was established that the fire had rendered the premises untenantable, thus imposing upon the defendant herself the duty of restoring them; and that, in any event, the defendant had waived the right to press this claim in the present action by accepting rent from the plaintiffs after the building had been repaired and they had re-entered as tenants.

While equity will never grant relief in cases of wilful or gross negligence in failing to fulfil a condition precedent in a lease, it will relieve in cases of mere neglect to fulfil such a condition where the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the lessee as to make it unconscionable to enforce the condition literally.

In certain classes of option contracts as, for example, a mere option to purchase real estate, time may be of the essence and a strict and literal performance of the provisions relating thereto may be required. But this is not necessarily true of an option for the renewal of a lease, which cannot be regarded as an independent or isolated provision but must be construed in connection with the entire instrument as an integral part thereof and as constituting a part of the inducement and consideration for the several undertakings of the lessee such as the payment of rent and the making of improvements; and, therefore, if strict enforcement of the conditions imposed upon the exercise of the option by the lessee would result in an inequitable forfeiture, equity will grant appropriate relief.

The lease in the present case, the original term of which was ten years, gave the plaintiffs the privilege of an extension for a further period of five years upon stated terms, but "in the event that the lessees desire said extension they shall give notice to the lessor to that effect in writing at least sixty days before the termination of this lease." Through mere forgetfulness on the part of the plaintiffs, the written notice, which was due on December 31st, was not given until January 3d, a Sunday and a holiday having intervened; but the defendant refused to grant the extension because of the delay though she had been in no way prejudiced thereby. Shortly after the commencement of the lease, the plaintiffs had placed $25,000 worth of improvements upon the premises, all but $1,000 worth of which were destroyed by the fire; and after the restoration of the building and within two years of the expiration of the lease, they expended $3,000 more in the re-establishment of the business, all of which would become the defendant's property upon the termination of the lease. *Held* that the plaintiffs were entitled to an injunction ordering the defendant to execute a renewal of the lease.

Argued October 27th, 1927—decided March 8th, 1928.

ACTION for an injunction ordering the defendant to execute a renewal and extension of a lease of premises occupied by the plaintiffs, and for other relief, brought

to the Superior Court in New Haven County and tried to the Court, *Baldwin, J.;* judgment for the plaintiffs, and appeal by the defendant. *No error.*

The trial court found these facts: On April 17th, 1917, Grace F. Rice and plaintiffs entered into a written lease of a building in Waterbury for a term of ten years. The defendant acquired title to this property in 1919, it then being of the value of $90,000. Among other provisions the lease provided: "And it is further agreed that the lessee may have an extension of five years at [from] the termination of this lease at the annual rental of $7,000 per year, payable at the rate of $583.34 per month, in advance. In the event that the lessee desires said extension they shall give notice to the lessor to that effect in writing at least sixty days before the termination of this lease, and in default thereof this lease will terminate by lapse of time on the 28th of February, 1927." From 1918 to 1920, inclusive, the plaintiffs expended $25,000 for alterations and improvements in the building in accordance with the provisions of the lease. On December 28th, 1924, a fire rendered this building untenantable. After the fire defendant neglected to restore the premises to a tenantable condition, claiming that that obligation rested on plaintiffs. Upon their refusal to either restore the building or pay rent, the defendant brought an action of summary process against plaintiffs, and claimed that they had committed waste. The court rendered judgment in the action of summary process for the plaintiffs herein, found that the building was untenantable, and held that there was no obligation on plaintiffs to restore the building or pay rent during the period of untenantability and that plaintiffs had violated none of the terms of the lease. No appeal was taken from this judgment. The building remained untenantable for about fifteen months, but

after the summary process judgment, defendant re-
stored it to a tenantable condition and thereupon
plaintiffs re-entered. The improvements which plain-
tiffs had made in the building preceding the fire were
destroyed by it except those of the value of about
$1,000. After re-entry plaintiffs paid the rent as they
had previously done prior to the tenth of each month,
except that on two or three occasions they paid two or
three days after the tenth of the month, although rent
was payable under the lease on the first day of each
month in advance. Since re-entering these premises
plaintiffs have expended in improvements in the build-
ing $3,000 in the expectation of enjoying its occupancy
under the terms of the lease, including such renewal
term as the lease provided for. They established their
restaurant in one of the stores, and from the business
made a sufficient profit to carry on the business and
provide a living for their families. If plaintiffs fail to
secuie the extension of their lease they will lose the
improvements placed in the building since the fire, and
those remaining in the building after the fire, all of the
value of about $4,000, together with the good will of
their business which will be a substantial loss. Since
the institution of this action defendant has brought an
action of summary process against plaintiffs seeking
to evict them and their subtenants, upon the sole
ground that the lease of the plaintiffs has expired by
lapse of time. One of the plaintiffs' subtenants has
threatened them with an action for damages for failure
to secure such extension of their lease, which is likely
to result in serious loss to them. If plaintiffs desired
to take advantage of the renewal clause of the lease
they were required under the lease to give written no-
tice of such intention at least sixty days before the
termination of their lease, which would have been on
December 31st, 1926; in fact they gave it on January

3d, 1927. The first day of the period of neglect in giving this notice was a holiday, the second a Sunday, and on the following day, Monday, upon consulting their attorney, they gave the required written notice. On January 5th, 1927, defendant acknowledged in writing the receipt of the notice, and advised plaintiffs that she would consider the lease terminated on February 28th, 1927, as provided by its terms. The failure of the plaintiffs to give this notice within the required time was due to mere forgetfulness and not to wilful or gross negligence on their part.

The defendant has suffered no damages, by reason of the failure to give the notice three days earlier, through a change in the relation of the defendant to the property. If the defendant regains possession of the property free from the encumbrance of the lease to plaintiffs she could either sell it, or lease it, more advantageously. The defendant has refused to enter into a new lease with plaintiffs in accordance with the provisions of the renewal clause of their lease. The plaintiffs paid the rent for the month of January following the fire in order to protect their interest in the property and before the question of the untenantable character of the building had been determined. The accumulation of water in the cellar and the freezing of that and the pipes caused considerable damage to the portion of the building remaining after the fire.

The lease also contained this provision: "And it is further agreed that the lessee may sublet said premises in whole or in part to a corporation or corporations which they may organize but the lessee shall be liable for the rent for the full term even though the lessor accepts it from the lessee." The Xanthos Candy Company, a subtenant of plaintiffs, was occupying one of the stores in this building in the spring of 1926, and had been a subtenant in it since January 1st, 1920.

A week before Easter Sunday, 1926, one of the officers of this company, without the knowledge or consent of either of the plaintiffs, permitted one Leary to occupy space in the store for a week for the sale of flowers. The selling of flowers by Leary in the store was known to defendant's son and agent, who made no objection to it and continued to receive rent as before, and never made complaint of this to plaintiffs, except by letter of April 7th, 1926, in which defendant called the attention of plaintiffs to the fact that waivers of failure to pay rent when due and of subletting without consent were not to be construed as waivers of such violations of the lease in the future, and that in case of future violations of the lease in payment of rent, or in subletting, defendant would treat the lease as ended. The plaintiffs and one Hertzmark agreed that the plaintiffs would organize a corporation for conducting a shoe store, give the corporation to be formed a lease and then turn over the control of the corporation to Hertzmark. Pursuant to this agreement, the plaintiffs, in May, 1926, organized the Dobbs Shoe Company, the corporation having a capital stock of $5,000 divided into fifty shares of a par value of $100. One of the plaintiffs subscribed and paid for twenty-five, the other for twenty-four shares, and the wife of one of the plaintiffs for one share. As soon as the certificate of organization was filed, the plaintiffs leased this store to this corporation and sold for cash forty-seven shares of this stock to Hertzmark, one share to his manager, and each of the plaintiffs retained a share. The certificate of organization was filed May 12th, 1926. Before the organization of the corporation and the execution of the lease, the plaintiffs consulted counsel and were advised that under their lease they could sublet this store to the corporation in the manner in which this was done. The plaintiffs had during the term of their

lease organized corporations in a similar manner and executed leases to such corporations.

*William E. Thoms*, for the appellant (defendant).

*Lawrence L. Lewis*, for the appellees (plaintiffs).

WHEELER, C. J.   The defendant's requests that paragraphs seven and eighteen of the finding be stricken out are denied except that "some of the subtenants" as stated in paragraph eighteen is changed to "one of the subtenants." Paragraphs twenty-eight, twenty-nine and thirty-nine of the finding are stricken out as conclusions of law. Defendant's requests that paragraphs four, thirteen, eighteen, nineteen, twenty-three and twenty-four of the draft-finding be added to the finding are denied as contrary to the evidence, or based on conflicting evidence, and her requests that paragraphs twelve, sixteen, seventeen, twenty and twenty-one of the draft-finding be added to the finding are granted substantially in the form requested.

The plaintiffs seek a mandatory injunction ordering defendant to renew their lease for the period of renewal specified in the lease, and restraining defendant from bringing an action of summary process to evict them. The defendant answered admitting some and denying other allegations. Defendant now assigns as error that plaintiffs are not entitled to the equitable relief prayed for because of their violations of the covenants of their lease: in making the lease to the Dobbs Shoe Company, in permitting the occupancy of the store by Leary, in the conduct of the plaintiffs subsequent to the fire in relation to the leased premises damaged by exposure to the elements, and in the failure to give notice of the intention of plaintiffs to renew the lease. It was the duty of the defendant to have

pleaded such violations of the lease as she thought would overthrow or affect plaintiffs' claim for equitable relief. Opportunity would then have been accorded the plaintiffs to have replied by pleading, *res adjudicata*, waiver, or the like. The defendant did not so plead, but under her answer of a partial denial the court permitted defendant to introduce evidence of the several claimed violations of the lease by plaintiffs which form a part of the defendant's reasons of appeal. Both parties appear to have been permitted to introduce such evidence as they desired in support of the contested allegations of the complaint, of the claimed violations of the lease, of whatever defenses plaintiffs desired to interpose to these, and of all evidence tending to substantiate plaintiffs' claim for equitable relief, or the contrary.

The condition of the record makes it clear that we can determine all of the issues which appear in the assignment of errors without doing injustice to either party. We therefore shall determine these issues without further consideration of the irregularity in the pleading and in the presentation of the case in the trial court. The making of the lease to the Dobbs Shoe Company and the subsequent transfer of the control of the stock of the company to Hertzmark, appear to have been done in literal compliance with this provision of the lease, "And it is further agreed that the lessee may sublet said premises in whole or in part to a corporation or corporations which they may organize but the lessee shall be liable for the rent for the full term even though the lessor accepts it from the said lessee." All of the facts which defendant sought to have added to the finding, tending to disclose the bad faith of the plaintiffs or their ulterior purpose in avoiding the clauses of the lease concerning subletting, the court refused to find. We cannot find that the trial

court was in error in this. It did appear that the
course pursued was taken by advice of counsel, and
that during the term of the plaintiffs' lease other cor-
porations had been organized and leases executed to
them, thus indicating that the parties to this lease
either did not regard this method as beyond the terms
of the lease, or, if the defendant did so regard it, she
did not, so far as appears, object to it. It is the con-
duct of the plaintiffs in connection with the making of
this lease which determines whether the violation of
the lease, if it were a violation, affected the right of the
plaintiffs to equitable relief. The facts found do not
raise an inference of inequity in the course taken re-
garding this corporation, its stock and the lease to it.
The occupancy by Leary of space in the store of the
Xanthos Candy Company, sublessees of plaintiffs, for
the sale of flowers for a week preceding Easter Sunday,
1926, is found to have been permitted by the Candy
Company without the knowledge or consent of either
of the plaintiffs. The defendant's agent knew of this
occupancy at the time and made no objection to it.
Thereafter, and as in the case of the Dobbs Shoe Com-
pany, defendant continued to receive the rent under
the terms of the lease and made no objection or com-
plaint for violations of the lease on account of the
occupancy of Leary, or of the lease to the Dobbs
Company. The letter of April 7th, 1926, was an ex-
press waiver of these instances of subletting, had the
plaintiffs been responsible for them.

The claim that the plaintiffs breached their lease
by committing waste, through leaving the building
after the fire exposed it to the elements, was adjudi-
cated in the summary process action and determined
adversely to defendant. Further, the court has found
that the premises after the fire were untenantable and
remained so until restored by defendant, whose duty

it was to care for these premises after the fire and during their untenantable condition. Moreover, upon the restoration of the premises, plaintiffs re-entered and continued to pay rent as before for upward of two years, and in accepting this rent the defendant waived her right to defend this action for such breach, if it had been a breach.

The covenant of the lease the violation of which the defendant most relies upon is the provision requiring plaintiffs to give sixty days' notice of their intention to renew. Her counsel urge that the equitable interests of the plaintiffs are not sufficiently great to bring this case within the rule announced in *Fountain Co.* v. *Stein,* 97 Conn. 619, 626, 118 Atl. 47. While not directly urging the overruling of that case, they, with insistent persistency, admonish against the extension of the rule, or its application to a case which does not clearly fall within the equitable considerations upon which we based it, and press upon our consideration their assertion that that rule "is undoubtedly different from that held by a majority of the courts." Our holding was this: "We think the better rule to be that in cases of wilful or gross negligence in failing to fulfil a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease."

In the case before us the delay in giving the notice was due to mere forgetfulness. It was slight—three days—the first of which was a holiday, the second a Sunday. No loss to the defendant resulted through the delay. The plaintiffs have placed in this building im-

provements of the value of about $4,000 which belong to the lessor by the terms of the lease. Three thousand dollars' worth of these improvements were placed in the building within two years of the expiration of the lease. The fire and the delay of fifteen months before defendant restored the building to a tenantable condition, made it necessary for plaintiffs to again establish their business and custom. In the two years prior to the renewal period they had paid the expenses of the business, obtained from it a living for themselves and their families, and secured for their business a good will which was valuable.

The trial court was right in its conclusion that the failure of the plaintiffs to secure a renewal would be, under these conditions, "an irreparable and unconscionable loss," bringing the case well within the rule of the *Fountain* case, *supra.* In view of counsel's criticism of that case we have re-examined with care our holding and the authorities existent when that case was decided, as well as the decisions rendered thereafter, and will, briefly, state some of the additional reasons which have caused us to reaffirm for this jurisdiction the authority of the *Fountain* case. The general rule is that unless the delay is so great as to be inexcusable a failure to perform in the time agreed upon will not preclude relief in equity from a forfeiture, when the other conditions affording equitable relief as stated in the rule of the *Fountain* case quoted above are present.

The provision of this lease is one of option in which there is an obligation on the part of the lessor, upon the lessee giving the specified notice, to give the renewal of the lease, but no obligation on the part of the lessee to give the notice, or to accept the renewal. It is held by high authority that time is always of the essence of a contract of option. In support of this con-

struction it is said the question "is not one of condition implied in law but of an express condition which must be strictly performed in order to hold the promisor liable." 2 Williston on Contracts (1920 Ed.) §853. That would be true of an option such as a mere option to buy real estate. It is not true, we think, as to all forms of contracts of option, nor of the provision for an option to renew in the lease before us. It has no relation to an option granted a lessee for the renewal of his lease upon his giving notice of his intention to renew in a stated manner and time such as is found in the lease made by these parties. "All of the clauses of the instrument are to be construed together as a whole, so as to give effect to all of its parts." *Fountain Co.* v. *Stein, supra,* p. 622. The consideration of this lease was not merely the payment of the rental provided in the lease but that, plus the subsequent ownership by the lessor of all improvements made a part of the leased building by the lessee. The consideration of the lease to the lessees was not merely the use of the leased premises for the first term, but also the prospective use in the renewal term. The promise on the part of the lessor to grant a renewal, and the prospect that the lessees would avail themselves of their right to a renewal was an indivisible part of the contract of lease, and formed a substantial consideration for it. The lessees were undoubtedly willing to pay more rent for a lease of business property near the center of Waterbury for a stated term with a privilege of renewal upon the same terms, than they would have been for a single term, and willing to make more extensive improvements, and to agree that these should become the property of the lessor because of the opportunity to secure a longer lease. With each payment of rent, and with every improvement made, the lessees were paying the consideration agreed upon for the renewal of the

lease. Having completed the payment of the entire consideration which they had agreed to pay, they ought not to be denied the equitable relief which would be accorded them in their situation in every form of contract other than one for an option. The broad statement of the rule that "the failure of the optionee to exercise his right of election and to give notice within the time stipulated in the option, or implied by law, ends his option rights," found in §862 of James on Option Contracts, is contradicted in §848, where we find this qualification of the rule, "except in a few instances exhibited by decisions referred to later on, in which the courts, upon broad equitable grounds, have recognized and enforced elections made and notices given after the expiration of the contract time." We also find on page 401, in note 3, a qualification of this rule: "There should, perhaps, be a qualification of the rule of the text when the option is a part of a lease or other contract which furnishes the consideration for the option, or where the acts done under the lease are with a view to the exercise of the option. In such cases there is reputable authority that time is not necessarily of the essence."

The true consideration of a renewal provision is excellently stated in *McCormick* v. *Stephany,* 61 N. J. Eq. 208, 217, 48 Atl. 25, in considering a lease with an agreement to give the lessee the option to purchase at the lessor's figure if the lessor secured a purchaser ready to purchase at this price. "The agreement," the court says, "to sell was contained in a lease of the premises, and in such cases the payment of the rent is held to be applicable as consideration for the agreement to convey at the named price. . . . Such an agreement to convey is not a mere unaccepted proffer based upon no consideration, as is a letter offering to sell, nor is it a naked promise to sell at

a price within a limited time. It is a completed
purchase of a right to have a conveyance if the pur-
chaser shall choose to buy upon the terms named.
. . . In such case there is no question of the ar-
rival of the parties at a common intent. They have
already made a contract upon consideration paid, by
which the owner is bound to convey whenever the con-
dition happens, and the making of a counter proposal
to him does not enable him to retain the consideration
paid and to declare the contract forfeited." In *Moni-
hon* v. *Wakelin,* 6 Ariz. 225, 230, 232, the lease gave
the lessees the right to renew a five year lease by giving
written notice six months before the termination of
the first term. The court says: "An option to pur-
chase, or to renew a lease, standing alone, unsupported
by any consideration which has passed, both in law and
equity is regarded differently from a covenant to con-
vey, or to renew a lease forming an integral part of a
contract or lease, containing several distinct covenants,
and founded upon an adequate consideration. The
latter is treated as more than a mere privilege, and as
having all of the elements of a mutual contract. . . .
Such covenant to convey or to renew a lease, unless
it be otherwise declared in the instrument itself, is
properly held to constitute a substantial part of the
whole contract, because it might well be considered as
a material inducement which led to its execution."
The court held in *Schroeder* v. *Germeinder,* 10 Nev.
355, 364, that equity will enforce a covenant to renew
a lease, "provided it is shown to have been made upon
a fair consideration, and where it forms part of a con-
tract, lease or agreement that may be the true con-
sideration for it. What was the consideration for this
covenant giving the first privilege to purchase? In
order properly to answer this question, all the cove-
nants in the lease must be considered. The covenant

Xanthakey *v.* Hayes.

upon the part of the lessor to lease the premises for a period of two years, with privilege of two more; the right of the lessees to make improvements thereon; to purchase the same at any time at the price mentioned, and the covenant upon the part of the lessees to pay the rent agreed upon, must be considered as constituting one entire agreement, each particular covenant forming an inducement thereto. The covenant to pay the rent must be deemed to have been made in consideration, as well as for the privilege of becoming the purchaser of the property, as for its use." See also *House* v. *Jackson,* 24 Ore. 89, 32 Pac. 1027; *Souffrain* v. *McDonald,* 27 Ind. 269. In the case of a renewal of a ninety-nine year lease where the lessee was in default the court held: "In determining the right of the lessee to renew in this class of cases, the question to be considered is, has the party asking for relief been guilty of gross negligence, or is the default relied on the result of mere negligence?" *Selden* v. *Camp,* 95 Va. 527, 531, 28 S. E. 877. The courts of Maryland and California support the doctrine of these cases. *Banks* v. *Haskie,* 45 Md. 207; *Worthington* v. *Lee,* 61 Md. 530; *Myers* v. *Silljacks,* 58 Md. 319; *De Rutte* v. *Muldrow,* 16 Cal. 505; *Hall* v. *Center,* 40 Cal. 63. Professor Corbin, in his article on Option Contracts, 23 Yale Law Journal, 662, recognizes the existence of the equitable remedy where forfeiture is claimed for failure to give notice or to pay money within the prescribed time. He says: "In option contracts time is nearly always of the essence. This would be so on either theory of an option. If we regard it as an offer, it is open for a time limited and no offer can be accepted after its lapse. If we regard it as a conditional contract, it contains the express condition that notice shall be given or that money shall be paid by a specified time. Such an express condition should be en-

Xanthakey v. Hayes.

forced according to its terms, unless such enforcement will result in an inequitable forfeiture."

The annotator of the note to *Fountain Co.* v. *Stein,* in 27 A.L.R. 981, 982, similarly recognizes the existence of such an equitable remedy: "In general it may be said that courts of equity have granted relief in cases of special hardship or of failure to give notice within the required time because of some unavoidable accident or circumstance, where the delay has not been wilful or the result of gross negligence, and the landlord has not been prejudiced thereby, and justice will be promoted by granting a renewal of the lease rather than by giving effect to the consequences of the tenant's failure to give the notice of renewal within the time stipulated." See also Underhill on Landlord & Tenant, Vol. 2, p. 1383, §810.

We, too, have recognized this remedy as available to a lessor in a contract for an option in *Roberts* v. *Norton,* 66 Conn. 1, 6, 33 Atl. 532, where we held: "Regarding the transaction as a purchase by the defendant with an option to the plaintiff to purchase from him 'for a given price within a limited time,' it is clear that, independently of the difficulty of granting a decree for specific performance upon the complaint as it stands, the plaintiff is not, on the facts found, entitled to such relief. Time has, by this court, been held to be of the essence of such a contract. *Phipps* v. *Munson, supra* [50 Conn. 267]. This should be so, at least to the extent of preventing a plaintiff from successfully inviting a court to ignore his laches, for which he shows no excuse, or palliation, and regarding which no blame attaches to the opposite party." We enforced the equitable remedy to prevent the forfeiture of a lease for failure to pay within the prescribed time in *Thompson* v. *Coe,* 96 Conn. 644, 115 Atl. 219. In applying the principle of these two cases to the case of

an option for a renewal under a lease, we had but a short step to go to reach the conclusion in the *Fountain* case.

We have examined the three cases upon which the appellant especially relied. *Doepfner* v. *Bowers,* 106 N. Y. Supp. 932, holds that where the time within which an option is to be exercised is a condition precedent and no title has vested, and none is to vest until the condition is performed, equity can give no relief in the event of a forfeiture. The opinion in the *Fountain* case sufficiently discusses the effect of a condition precedent in an optional provision of a lease, and of the existence of an equitable interest in the lessee under the circumstances of that case. We have enlarged in this case upon the consideration of the lease which created the equitable interest in the lessees under the present lease. The Massachusetts case, *Donovan Motor Car Co.* v. *Niles,* 246 Mass. 106, 107, 140 N. E. 304, disposes of the attempt to enforce an option for renewal of a lease, when the lessee had not given the notice of its intended exercise of its option, in these words: "The remaining contention is that time not being of the essence of the contract the written notice was sufficient. The short answer is, that whether the question arises either at law or in equity it is settled that 'time is of the essence of the option.' " That is, in option contracts of every class, for every purpose, and where the parties have not expressly made time of the essence, and where the nature of the contract, construed in the light of its surrounding circumstances, does not make time of the essence, the law will make time of the essence, and deny to the lessee, who has, through slight negligence, failed to exercise his option within the required time, a remedy in equity, and enforce against him a forfeiture, no matter how great the hardship to him may be, or how unconscionable the re-

sult.  Such a rule is, we believe, against the trend of modern equity jurisprudence, as well as against our former and present holding.  *Murtland* v. *English*, 214 Pa. St. 325, 63 Atl. 882, holds that the lessee in order to make claim under a renewal provision in a lease must give notice to the landlord of his intention to claim it as prescribed in the lease.  The case was not brought to secure an equitable remedy nor do its facts bring it within the facts in the *Fountain* case or this case.  The present case is peculiarly one for the interposition 'of equity to prevent the consummation of unconscionable hardship to the plaintiffs

There is no error.

In this opinion the other judges concurred.