LAWRENCE S. THILO ET AL. v. MIKLOS DERI ET AL.

SUPERIOR COURT          FAIRFIELD COUNTY          FILE No. 82483

Memorandum filed October 22, 1951.

Beers & Beers, of New Haven, for the Plaintiffs.

Robert K. Lesser, of Bridgeport, for the Defendants.

CORNELL, J. The plaintiffs seek a decree of specific performance requiring that defendants convey certain real estate in accordance with an option contained in a lease executed on June 27, 1940, between the defendants as lessors and plaintiff, The Atlantic Refining Company, as lessee. So far as material to the issues in this case, the option provides: "For and in consideration of the premises and the sum of One Dollar ($1.00) the receipt whereof is hereby acknowledged, the Lessors hereby grant to the Lessee during the term of this lease the option to purchase the herein described premises, including buildings to be erected thereon, for the sum of Twelve Thousand Dollars ($12,000.00)." In a supplemental agreement executed on December 14, 1940, it was stipulated that the term of the lease commence on December 1, 1940, and terminate on November 30, 1950. On July 11, 1950, the plaintiff lessee, by an instrument in writing, assigned the option to purchase the premises to the plaintiff Lawrence S. Thilo. Defendants in behalf of both plaintiffs were informed of such assignment by registered letter dated August 14, 1950. In the same communication the defendants were advised that both the lessee and its assignee, Thilo "hereby exercise said option and are ready to proceed with the purchase of the premises at the price provided in the option."

On August 24, 1950, the attorney for both defendants wrote the attorney for the plaintiffs stating: "I wish to advise you that my clients do not intend to sell the premises to The Atlantic Refining Company or its assignee, Lawrence S. Thilo . . . ." Thereupon by process served on August 31, 1950, the present action was commenced, claiming a decree of specific performance, etc. against both defendants requiring them to convey the premises in accordance with the terms of the option. To the complaint defendants, in addition to a general denial, have jointly pleaded four special defenses. In the third of these it is alleged that they, being unable to understand legal terminology, were induced to execute the document in reliance upon the plaintiff Refining Company's representation that there was a clause in the lease to the effect that the plaintiff lessor Refining Company "might buy the leased premises at the end of the term but that such clause did not bind the defendants to sell" the same to plaintiff, Refining Company. Admittedly no such provision appears in the lease. The intimation is that the option was placed therein in its stead, without defendants' knowledge or consent. Without discussing the legal sufficiency of the allegation to state a cause of action in fraud and deceit, mutual mistake, oppression, or the like, the finding is that there is no factual basis in the evidence upon which to base a conclusion that defendants were misled in any way which would present a defense to their performing their obligation under the option.

In their first special defense the defendants allege that "the plaintiffs have never made any tender of the option price . . . to the owners of said premises." Attention is directed in this connection to that provision of the option which stipulates that "the Lessors agree to convey said premises free and clear of all encumbrances, restrictions, mortgages and easements and further agree that actual settlement for the purchase of said premises shall not become due and payable until such conveyance can be made as aforesaid." There is no evidence that the defendants (the lessors) had notified the plaintiffs or either of them that they had complied with this condition, without which no obligation to pay or make tender of the payment for the property, arose. On the contrary, their attorney, as noted supra, advised on August 24, 1950, that defendants "do not intend to sell the premises" to either of the plaintiffs. This expressed attitude on the part of the defendants dispensed with the necessity of any formal tender on the part of plaintiffs. *Didriksen v. Havens,*

136 Conn. 41, 47. In their attorney's letter of August 24, 1950, following the unequivocal notice of refusal to sell, is a statement to the effect that he (the attorney) would be willing "to discuss some other type of arrangement which might be entered into between our respective clients which would be to their mutual advantage." Reading this statement together with the repudiation of their obligation to convey the premises contained in the option, it implies that defendants might enter-tain a different arrangement—very probably by inducing the plaintiffs to accept another proposal to be made by defendants. Plaintiffs, however, were entitled to insist upon performance of the option according to its terms and under no duty to con-sider some other "arrangement." See *Federal Finance Co.* v. *Forman Properties, Inc.*, 135 Conn. 153, 158; *Tracy* v. *O'Neill*, 103 Conn. 693, 699. See also *Xanthakey* v. *Hayes*, 107 Conn. 459, 472, (option for renewal of lease); *Kreutzer* v. *Lynch*, 122 Wis. 474, 476. It results that neither of the plaintiffs was under any obligation to make a formal tender of the purchase price to enable him or it to safeguard the right secured in the option. "The law does not require an act which would be a mere futility." *Tracy* v. *O'Neill*, supra.

The second special defense alleges, in effect, that "within the provisions of the option," the plaintiff Refining Company "was not given the right of assigning the same." It is not clear from this expression whether the claim is (a) to put it in the ab-stract, that options to purchase land are not assignable—at least in the absence of language indicating that they are trans-ferable or (b) if the option in this case was assignable it was not assignable to plaintiff Thilo or (c) was not assignable apart from the lease—that is, that it could not be culled from the lease indenture and as severed therefrom, assigned, as was attempted to be accomplished. As respects the contentions implicit in (a) and (b) supra: Under the generally prevailing weight of authority, any estate or interest in lands and tene-ments with few exceptions may be assigned. 6 C. J. S. 1054, § 8. An option to purchase land is assignable (*Kreutzer* v. *Lynch*, supra, 478, 100 N. W. 887; *Lewis* v. *Bollinger*, 115 Misc. (N. Y.) 221, 224) whether or not made expressly so by its terms. *Simmons* v. *Zimmerman*, 144 Cal. 256, 260; 32 Am. Jur. 281, § 301. "It may be laid down as a general principle, with exceptions as below, that an option contract is binding upon the assigns and successors of the option giver and that it is enforcible by the assigns of the option holder," where the

option is a contract upon consideration to convey on condition and not a mere offer with a promise to hold the offer open. Corbin, Option Contracts, 23 Yale L. J. 641, 658; James, Option Contracts, p. 241, § 602. An option to purchase land does not vest in the holder of the option any interest in the land, legal or equitable, although it has been said that the optionee's right or privilege to buy is such an interest in the land as he may sell or assign within the Statute of Frauds. 66 C. J. 487. Nevertheless, a covenant conferring an option to purchase runs with the land and in the absence of stipulation to the contrary, is assignable. *Keogh* v. *Peck,* 316 Ill. 318, 38 A. L. R. 1151. Unless an option for the purchase of land is made to be exercised exclusively by the optionee or is personal to him or stipulated by the optionor to be nonassignable by the optionee or given on the latter's personal credit, it is assignable by the optionee. 66 C. J. 508, § 32. None of the noted exceptions exist in the instant case. In that situation, the option considered as an option, only, and apart from its connection with the instrument which includes the lease, would be assignable. However, the decision here is governed by more concrete considerations.

The decisive question, in this branch of the case, is, whether the option could be validly assigned, apart from the lease in which it appears as mentioned in (c) supra. There is no opinion of the Supreme Court of Errors precisely in point and very few in other jurisdictions. It will be conceded that an option to purchase land and a lease of land are two different and distinct conceptions with nothing essentially in common between them. It is not unusual, however, for a lessor to include in a lease a provision granting to the lessee the privilege of purchasing the demised premises at any time or at a specific date within the term of the lease, or upon the termination thereof at a specified price and upon stipulated terms. In one such case in this state between the immediate parties to the lease, it was said that the option to purchase was an integral part of the lease there examined. *Thompson* v. *Coe,* 96 Conn. 644, 650; so, also, of an option to renew or extend a lease. *F. B. Fountain Co.* v. *Stein,* 97 Conn. 619, 622; *Xanthakey* v. *Hayes,* 107 Conn. 459, 470; *Ackerman* v. *Loforese,* 111 Conn. 700. There are many other cases to the same effect in other jurisdictions which it would be merely cumulative to cite. Construing the particular instruments before them, some courts have reached the conclusion that an option to purchase the land demised in a lease is an independent provision and severable from the other

provisions of the instrument which may be assigned separately from the writing in which the same is incorporated. *Pettit* v. *Tourison,* 283 Pa. 529, 531; *Bennett* v. *Petroleum County,* 87 Mont. 436, 446; *Carter* v. *Frakes,* 303 Ky. 244, 248; *Lewis* v. *Bollinger,* 115 Misc. (N. Y.) 221, 224. "Whether the option to purchase contained in a lease is an independent agreement, or in connection with the lease forms one entire agreement, depends upon the intention of the parties, and this is to be resolved by the construction of the instrument read in the light of its circumstances." *Thompson* v. *Coe,* supra; 51 C. J. S. 638.

The conclusion reached in the instant case, however, requires no dissection of the lease and the agreements contained therein as entire and interdependent on the one hand or divisible and independent on the other. In either case, the same result would ensue. The issue being limited to the question whether the option to purchase was assignable without the lease being assigned, depends, of course, upon whether or not such a course was within the intent displayed by the instrument under examination. This is ascertainable by reading all of its clauses together as a whole so as to give effect to all of its parts. *F. B. Fountain Co.* v. *Stein,* 97 Conn. 619, 622. Applying this rule, it is not difficult to discern the underlying purposes of the parties to it, in view of the obvious intent of certain of its provisions. Defendants' land was vacant when the transaction was entered into. On the part of the plaintiff Refining Company there was the design to secure a site for an additional gas service station for the sale of its products and the extension of its business; for the defendants lessors there was the object of converting an unproductive parcel of land to one that would be income-producing and increase its value. The parties, accordingly, after some negotiation, executed the instrument now under examination wherein defendants demised the premises to the plaintiff Refining Company as lessee for a period of ten years from November 1, 1940, which, it was later agreed, would commence on December 1, 1940, and terminate on November 30, 1950. The rental price for the whole term was fixed at $10,800 for the land with a service station building and driveway thereon which defendants lessors, on their part agreed to construct. The lease and agreement states an arrangement between the parties whereby the plaintiff lessee undertook to advance to the defendant lessors, the sum of $6,800 in stipulated instalments to pay for the making of these improvements and to deduct that sum from the agreed rental for the term, thus

leaving the balance to be paid in monthly instalments of $33 each from the beginning of the period until its end. Many other agreements are incorporated in the instrument incident to the noted provisions of the lease as will appear from an inspection of the same. (Plaintiff's Ex. A). It is unnecessary to recite these in detail.

While the covenant granting the lessee, the Refining Company, the option to purchase the demised realty, incorporates no words indicative of the option's assignability, the instrument contains another paragraph which provides that "all promises, undertakings, covenants and agreements made in this lease by the Lessors and/or the Lessee shall be binding upon and shall inure to the benefit of the Lessors and the Lessee and their respective heirs, executors, administrators, successors or assigns." This applies by its terms not to the assignability of the lease and agreement as a whole but to separate and specific "promises, undertakings, covenants and agreements" contained in the instrument which by their nature, admit of such a transfer. The option to purchase is obviously a "covenant" or "agreement" within the meaning of this clause.

If, however, there be any doubt on this score, cogency is lent to the conclusion by another provision to the effect that "the Lessee may assign this lease or sublet the whole or any part of said premises without the consent of the Lessors, the Lessee remaining at all times liable for the fulfillment of the covenants of said lease." The significance of this paragraph here lies not in the fact that the lease was assignable, but in the circumstance that such an assignment would carry the option to purchase with it. "Ordinarily, where a lease of real property contains an agreement giving to the lessee the privilege of purchasing the property covered by the lease, under stated conditions, such covenant runs with the land and the option to purchase passes upon assignment of the lease to the assignee, thereof" 32 Am. Jur. 280, § 301; *Tantum v. Keller*, 95 N. J. Eq. 466, 471, aff'd, 96 N. J. Eq. 672. The assignment of a lease containing an option to purchase land transfers both the lease and the option. *Blakeman v. Miller*, 126 Cal. 138; *House v. Jackson*, 24 Oregon 89. Thus, the provision authorizing the assignment of the lease and making assignable "all premises, undertakings, covenants and agreements" contained therein complement each other. The first mentioned, of course, contemplates the transfer of the entire lease and ac-

companying agreements in toto to another; the other conceives the assignment of specific "covenants," etc., the character of which admit of such a severance without injury to the whole. As noted supra, there is no natural affinity between a lease and an option to purchase and the separation of the one from the other is without detriment to either. It is manifest that the writing contemplates the transfer of the option to purchase by either of two methods, namely as a resulting accompaniment of the assignment of the lease or an assignment of the option, alone—a conclusion which connotes that the assignment of the option, in question, was valid and effective to vest the same in the plaintiff, Thilo.

The fourth special defense alleges that the "lease . . . was lacking in mutuality in respect of the conditions contained therein," mentioning several of the covenants allegedly so affected. Accompanying such allegations is no effort to rescind the contract or request for any affirmative relief. Defendants, in their brief, submit no argument in support of this claim and the court can discover no basis for the contentions embraced in this defense. It is found to be without merit. "Broadly speaking, mutuality of obligation is an essential element of every enforceable agreement. However, it is sufficient that a consideration move to both parties, and mutual promises are not essential where a sufficient consideration is otherwise present, as want of mutuality is a form of want of consideration, and, therefore, although consideration is essential, mutuality of obligation is not, unless the want of mutuality would leave one party without a valid or available consideration for his promise." 17 C. J. S. p. 444.

If by the defense in question it is intended to allege that there was no consideration for the agreement granting to the plaintiff Refining Company the option to purchase the land, such a claim is without foundation in the provisions of the lease and agreements. "It has repeatedly been held that in a lease of real property, containing an option to purchase the same, the contract to pay the rent was a sufficient consideration to support the option." House v. Jackson, supra, 95. " 'The covenant to pay the rent must be deemed to have been made in consideration, as well as for the privilege of becoming the purchaser of the property, as for its use.' " Xanthakey v. Hayes, 107 Conn. 459, 473. A lease is sufficient consideration for an option to purchase land contained in it. Pearson v. Millard,

150 N. C. 303, 307; *Union Oil Co. v. Hale,* 163 Wash. 503, 506; *Feudtner v. Ross,* 74 N. J. Eq. 214, 217. In the instant case the option was specifically made "in consideration of the premises," which, of course, included the lease as well as the lessee's undertaking to advance the sum of $6800 of the rental monies to enable the defendant lessors to construct the service building and driveways.

Both the assignor The Atlantic Refining Company and its assignee, of the option to purchase the leased realty, Lawrence S. Thilo, are plaintiffs. Of course, when the assignor, Refining Company, assigned the option to Thilo it parted with the privilege of exercising it and vested the same in the assignee plaintiff, Thilo. Judgment may therefore enter in favor of the defendants against the plaintiff, The Atlantic Refining Company and in favor of the plaintiff Thilo against said defendants that specific performance be decreed as prayed for. In order to pre' vent any further misunderstanding, the plaintiff Thilo and defendants shall be present at the office of the clerk of the Superior Court, for the County of Fairfield, at Golden Hill Street in Bridgeport at eleven o'clock a. m. on Friday, Novem' ber 30, 1951; that unless the said plaintiff Thilo shall waive the requirement, the defendants shall furnish evidence to him that the property is free and clear of all incumbrances, restrictions, mortgages and easements; that in either event the defendants shall then and there deliver to said Lawrence S. Thilo, a duly executed deed of conveyance to the premises described in para' graph 1 of the complaint with the buildings and improvements thereon located upon receipt of payment from said Thilo of the sum of $12,000 as increased or decreased, as the case may be, by any proper adjustment authorized by the provisions of the instrument marked "plaintiffs' Exhibit A."