# CHARLESTON.

### J. B. AMMAR *v.* SIMON COHEN

Submitted May 22, 1924.   Decided May, 29, 1924.

LANDLORD AND TENANT—*Failure of Lessee to Give Lessor Direct Notice Before Expiration of First Term of Intention to Continue Tenancy Under Agreement Held Not to Deprive Former of Such Right.*

A lease demising a store room in a city for five years, to be used in the conduct of a cigar, fruit and soft drink business, and providing for payment of rent in advance with privilege on the part of the lessor to declare a forfeiture and re-enter the premises for failure of the lessee to pay the rent promptly, or to comply with any other covenant, further stipulates that at the expiration of the five years the "lessee shall have the right and privilege of renewing said lease for an additional period of five years", subject to all the terms and conditions contained in the lease, "except in event that if said lease being renewed and *continued* for an additional period of five years the monthly rental to be paid for the said lease shall be $60.00 per month, payable as hereinabove provided". The lessee took immediate possession and continued to occupy the premises during the first five years in the conduct of the business contemplated by the lease, during which time, by reason of the location of a central station by the interurban and street railway companies on an adjoining lot, the general development of the city, and the lucrative business built up by plaintiff, the rental value of the leased premises greatly increased. The stipulated rental was paid direct to defendant or his agent for a time, and then on request of defendant, transmitted by mail, usually several days late, but without objection by defendant. On Monday following the last day of the first five year period, Saturday, defendant served notice on plaintiff to vacate on the ground the lease had

terminated. Plaintiff immediately mailed defendant, in accordance with his usual custom, a check which he had written out on Saturday for the increased rental under the second term, but had overlooked mailing. There is evidence tending to show from the circumstances and conduct of the parties, that the lessor had knowledge, prior to the expiration of the first five years, of the lessee's intention to continue the tenancy during the ten year period. The lessee's failure, under these circumstances, to give the lessor direct notice of such intention at or before the expiration of the first term will not deprive the former of his right to continue the tenancy.

Appeal from Circuit Court, Kanawha County.

Suit by J. B. Ammar against Simon Cohen. From a decree for plaintiff, defendant appeals.

*Affirmed.*

*J. E. Chilton* and *Morton, Mohler & Peters,* for appellant.
*Byrne, Littlepage & Linn,* for appellee.

LITZ, JUDGE:

The defendant, Simon Cohen, appeals from a decree enjoining him from prosecuting his action of unlawful detainer against plaintiff, J. B. Ammar, for the possession of a certain storeroom belonging to defendant, and further decreeing plaintiff's right to continue the possession thereof, as tenant of defendant, under an option to renew and continue a lease of the premises.

By deed of lease dated February 25th, 1917, the defendant let and demised to the plaintiff for a period of five years thence ensuing the first floor of the western half of a certain double brick building situated on the south side of Virginia street, in the city of Charleston, designated as 603 Virginia street, at a rental of $55.00 per month payable in advance; to be used in a legal and proper manner for a cigar, fruit and soft drink store only. The lease prohibits the subletting of the premises or any portion thereof without the written consent of the lessor, and confers upon the lessor the right to declare a forfeiture thereof and re-enter the premises upon failure of the lessee to pay the rents promptly or to 'comply with any other covenant. By the last paragraph:

"It is further covenanted and agreed by and between the parties to this lease that at the expiration thereof said lessee shall have the right and privilege of renewing said lease for an additional period of five years from and after February 25th, 1922, subject to all the terms and conditions contained herein, and binding on both parties hereto, except in event that if said lease being renewed and *continued* for an additional period of five years the monthly rental to be paid for the said lease shall be $60.00 per month, payable as hereinabove provided."

Plaintiff having assumed the immediate occupancy of the premises, under the lease, has ever since retained the exclusive possession thereof. For a time the rent under the lease was delivered to the defendant, or his agent, in person, but later, at the suggestion of defendant, it was conveyed to him by mail; the check for the monthly payment being sent usually from one to three days late, without complaint from defendant.

The general development of the city, the location of a central station by the interurban and street railway companies on an adjoining lot, and the establishment by the plaintiff of a soft drink and confectionary business in the leased premises greatly increased their rental value. The defendant, therefore, became anxious to regain possession of the premises. On February 25, 1922, which was Saturday and the last day of the first five year term under the lease, the plaintiff wrote out his check payable to defendant for the sum of $60.00 as rent for the first month of the second five year period; but being engrossed in serving his trade, overlooked mailing it on that day. About noon Monday following the plaintiff was served with written notice by defendant demanding possession of the premises, on the ground that the lease was terminated. Thereupon plaintiff mailed the check, which was later returned by defendant. The plaintiff having refused to surrender possession, the defendant brought an action of unlawful detainer against him before a justice for the recovery of the premises. The plaintiff then instituted this suit to enjoin the action before the justice and enforce his option to occupy the property for the second five year term.

The defendant contends that the plaintiff's option to continue the tenancy for five years after February 25, 1922, contemplated the execution of a new lease for that purpose, requiring notice to defendant of plaintiff's election prior to the termination of the first term; and that such notice not having been given, the right of plaintiff further to occupy the premises ceased on that date.

The plaintiff, on the other hand, insists: (1) that the written lease properly construed does not contemplate the execution of a new lease for the second term of the tenancy; (2) that assuming the parties intended a new lease, direct notice of the plaintiff's election under the option was unnecessary, as notice may be inferred from their conduct and the circumstances of the case; and (3) that a court of equity, under the facts, without the notice, will preserve and enforce the plaintiff's right of continuing the tenancy.

The defendant rests his claim upon the decision in *Whalen* v. *Manley,* 68 W. Va. 328, as follows:

> "Holding over and continuing to pay the same rent by a lessee under a lease for twelve months, 'with the privilege of renewal for the term of five years, if the said second party so desires, at the expiration of said first year', without a new lease executed and without notice to the lessor before or at the expiration of the first term, of his desire or election to renew said lease for the additional term, renders him tenant from year to year and subject as such to the rights of the landlord and to be turned out of possession on notice at the end of any subsequent year."

He points out, however, that as no rent was accepted under the new term, the plaintiff is holding merely as a tenant at will.

It will be observed that the language of the lease in the instant case contains not only the words, "renewing" and "renewed" but also "continued". The Whalen-Manley case shows that a covenant in a lease giving the lessee an option to *"continue"* or "extend" the lease does not require the giving of notice as a condition precedent to its exercise, the holding over by the tenant being sufficient evidence of his election to accept the option. The distinction is that a mere

extension or *continuation* is an enlargement of the original term of the lease; whereas a *renewal* creates an additional term, rather than an enlargement of the first. The lease under consideration uses both words, "renew" and "continue", as if synonymous. This makes it uncertain as to whether a new lease or continuance of the old is intended. As a general rule, in construing provisions relating to renewals, where there is any uncertainty, the tenant is favored and not the landlord, because the latter, having power of stipulating in his own favor, has neglected to do so, and also upon the principle that every man's grant is to be taken most strongly against himself. But suppose a new lease had been contemplated, notice of the lessee's intention to renew need not be by direct communication, but the circumstances may be such as to indicate this purpose.

In the case of *Dickinson* v. *Robinson*, 272 Fed. 77, involving the lease of lands in Kanawha county, West Virginia, it is said:

> "Some authorities maintain that mere holding over is sufficient expression of the election of the lessee to exercise his right of *renewal* without further notice to the lessor. The conflicting cases are cited in notes, 112 A. S. R. 752; 29 L. R. A. (N. S.) 176-7; 16 R. C. L. 397. Our view is that the lessee should in some way give notice of his election before or at the termination of the original term, but the notice need not be a formal written, or even oral, communication. Any single act or expression, or any course of conduct of the lessee indicating to the lessor or other party interested his election to renew is sufficient, and the lessor by his words or acts may waive notice of the election of the lessee."

It is insisted that the defendant well knew the purpose of plaintiff to continue his tenancy under the lease for ten years; that this was plainly evidenced by reason of the plaintiff's establishment and conduct of a lucrative business on the premises, and their great and permanent increase in rental value.

The circuit court found that the defendant, before and at the expiration of the first five year period, "had notice of and clearly understood that the plaintiff intended to continue possession of the leased premises under the provision

of the lease thereof for an additional period of five years."
From the facts and circumstances disclosed by the record we
can not say that this finding was unwarranted. The defend-
ant did business within three blocks of the leased premises
and made no inquiry as to whether the plaintiff intended to
exercise his option to continue the tenancy. When asked
why, he refused to answer the question. From this the trial
court no doubt inferred that a truthful reply would have
disclosed the defendant's knowledge of the plaintiff's desire
to continue his tenancy for the full ten years.

The plaintiff further insists that though he may have been
technically derelict in failing to give necessary notice of his
purpose to continue the tenancy, equity, under the circum-
stances, will nevertheless preserve and enforce the right in
his behalf. He says, in this connection, that an attorney se-
lected by the defendant prepared the lease and after its exe-
cution advised him that Cohen "couldn't bother" him "for
the next ten years". The plaintiff doubtless thought from
this statement that his payment of rent and compliance with
other covenants of the lease, without more, entitled him to a
lease for ten years. It is also likely true that if the defendant
had not apparently waived prompt payment of rent under
the strict terms of the lease, the plaintiff would have paid the
amount for the first month under the new period before the
termination of the first.

In view of the uncertainty of the option to renew and
continue the lease as to whether a new lease or an enlarge-
ment of the first was intended; the conduct and situation of
the parties, indicating an intention of the lessee to continue
his tenancy; and the circumstances showing good faith on
the part of the lessee, we have concluded that the plaintiff is
entitled to the relief sought. The exercise of the equitable
jurisdiction in suits for specific performance is always sub-
ject to the discretion of the court, not an arbitrary discretion,
but one to be exercised with due care and attention, in looking
to the conduct of the parties and to the facts and circum-
stances of each particular case. *Selden* v. *Camp,* 95 Va. 527.

"Admitting the theory as stated by the lord chancellor
and justices in *Hughes* v. *Metropolitan Railway Company,*
(Eng. Law Report Appeal Cas. vol. 2, 439), that a court of

equity has no right to grant relief by way of mercy, or merely to save a forfeiture, all the authorities concede that an honest mistake or ignorance of facts is a good ground for equitable interference. (*Henry* v. *Tupper*, 29 Vt. 358; *Rawstorne* v. *Bentley*, 4 Brown's Ch. R. 415)''. *N. Y. Life Ins. & Trust Co.* v. *The Rector, etc., St. George's Church*, 64 Howard's Prac. Rep., 511.

''Although the agreement is not one measurable by a pecuniary compensation, still, if the party bound by it has been prevented from an exact fulfillment, so that a forfeiture is incurred, by unavoidable accident, by fraud, by surprise, or by ignorance, not willful, a court of equity will interpose and relieve him from the forfeiture so caused, upon his making compensation, if necessary, or doing everything else within his power.'' Pomroy's Equity Jur., 4th Ed., sec. 451.

The decree of the circuit court will be affirmed.

*Affirmed.*