The plaintiffs are school children who attend public schools in the town of Hamden and their parents. The defendants are the board of education of the town of Hamden and the state board of education. The complaint in this action seeks to obtain temporary and permanent injunctions against the use of a printed curriculum by the state board of education in authorizing, and the Hamden board of education in teaching, a course entitled "Health Education." It is a course which requires compulsory attendance and includes, in addition to physical education, a comprehensive and planned sequential study of "reproduction," "hygiene," "sex education," "family life" and "growth." It has been prepared as a planned guide for use of teachers in instruction of school children of differing age and grade levels from kindergarten through grade twelve, which marks completion of high school studies. The course is outlined in a detailed curriculum containing 325 pages. The title of the curriculum is, "A Guide for the Teaching of Health, Kindergarten-Grade 12," and is dated November, 1968. The "Guide" is in evidence as a plaintiffs' exhibit and has been in use in the Hamden public schools for approximately two full school years. The curriculum follows in sequential manner the teaching of the following nine main concepts: (1) Growth and Development, (2) Public Health, (3) Family Living and Sex Education, (4) Safety and First Aid, (5) Health Maintenance, (6) Consumer Education, (7) Alcohol, Narcotics, Tobacco, (8) Nutrition, (9) Disease.
In a complaint containing four all-inclusive counts, the plaintiffs allege, among other claims that certain statutes of the state which regulate its educational *Page 400 
system have not been complied with and that they do not legally authorize the teaching of health education, the subject curriculum, and compulsory attendance. The plaintiffs further claim that the teaching of "sex education" and "family life" in public schools as a mandatory course is in violation of the provisions of the United States and Connecticut constitutions which prohibit establishment of religion and interference with the rights to the free exercise of religion, and that the teaching of the course is an unconstitutional invasion of the rights of privacy of the plaintiffs.
The complaint raises complicated and sensitive issues of fact and law. Approximately eight weeks were consumed in trial and argument, and the transcript of the trial contains more than 3300 pages. In addition, numerous and voluminous exhibits were introduced in evidence and the court viewed films which were offered by the plaintiffs and which have been in use in teaching the curriculum. The record is replete with conflicting testimony of individual lay witnesses as well as with conflicting expert opinions and printed evidence in the exhibits. Substantial and in some instances new questions of interpretation and construction of statutory and constitutional provisions are raised by the pleadings and the evidence. These questions concern the duties, obligations, rights and interests of the respective parties, as well as the extent of the authority of the town of Hamden and the state of Connecticut in authorizing and teaching a compulsory course in health education. Counsel have recognized the complexities of the issues and the necessity of further inquiry by them into the evidence and the applicable law. For the latter reasons they have requested until October 26, 1971, for the preparation and filing of the final brief by the plaintiffs on the issues relating to the merits of the plaintiffs' prayers for permanent injunctions *Page 401 
against the town and the state. A stipulation has been agreed upon by counsel that the trial of the case on the merits shall not be considered as completed until all briefs have been filed with the court.
The parties, through counsel, made oral arguments to the court on the application for temporary injunctions. Counsel for the plaintiffs and the defendants had agreed to file briefs relating to the temporary applications. The defendants have supplemented their oral arguments with written briefs. The plaintiffs have not. The parties have directed their oral and written arguments separately to each of the four counts of the complaint. The court, in like manner, has considered each count as it appears in the complaint and has limited itself only to a consideration of the record in its present state, without final briefs, and solely to the plaintiffs' claims for temporary injunctions.
Count 1 alleges that the state board of education has failed to comply with the statutory requirements of § 10-15 of the General Statutes. The plaintiffs claim that the last sentence of the statute mandates that courses in "health instruction" and "physical education" shall be prepared by the secretary of the state board of education and that they must then be approved by the state board before they may be taught in local school systems. The plaintiffs claim that these requirements were not satisfied and that the failure to meet these requirements renders the Hamden curriculum unauthorized and illegal. Section10-15 is quoted in full as follows: "Sec. 10-15. TOWNS TO MAINTAIN SCHOOLS. PRESCRIBED COURSES OF STUDY. Public schools including kindergartens shall be maintained in each town for at least one hundred eighty days of actual school sessions during each year. The state board of education may authorize *Page 402 
the shortening of any school year on account of an unavoidable emergency. The public schools shall be open to all children over five years of age without discrimination on account of race or color; provided town boards of education may, by vote at a meeting duly called, admit to any school children under five years of age or may exclude children who will not attain the age of five years until after the first day of January of any school year. In said schools shall be taught, by teachers legally qualified, reading; spelling; writing; English grammar; geography; arithmetic; United States, state and local history; the duties of citizenship, which shall include a study of the town, state and federal governments; hygiene, including the effects of alcohol and narcotics on health and character; physical and health education, including methods, as presented by the state board of education, to be employed in preventing and correcting bodily deficiency; instruction in the humane treatment and protection of animals and birds and their economic importance, such instruction, when practicable, to be correlated with work in reading, language and nature study; and such other subjects as may be prescribed by the board of education. Courses in health instruction and physical education shall be prepared by the secretary of the state board of education and, when approved by the state board of education, shall constitute the prescribed courses."
When, as required by § 1-1 of the General Statutes, § 10-15 is read "according to the commonly approved usage of the language," the court finds no ambiguity or uncertainty in § 10-15. See Hurlbut v.Lemelin, 155 Conn. 68, 73; State v. Springer,149 Conn. 244. A reading of the fourth sentence of the statute, without other considerations, clearly indicates on its face and without condition that local public schools are required to teach, among other courses listed, courses in "hygiene" and "physical *Page 403 
and health education." The last sentence of the statute makes clear to the court from a simple reading that courses in health instruction and physical educationmay be prepared by the secretary of the state board of education and then approved by the state board of education. It is further clear that when these steps have been taken, then the courses so prepared and approved, and no others, shall be the "prescribed" and the only courses in health instruction and physical education which shall be taught in local public schools. The wisdom of the imposition by legislative act of the conditions of preparation and approval by the secretary and the state board for establishing uniformity and "prescribed" courses in the specified studies for all local schools is not subject to judicial review.
The court is unable to agree with or to accept the plaintiffs' interpretation of the statute as the basis for finding illegality or granting injunctive relief. The use of the word "shall" in the last sentence of § 10-15 may be construed to permit discretion and to mean "may." Wentz's Appeal, 76 Conn. 405, 409;Staples v. Bridgeport, 75 Conn. 509. The United States Supreme Court has repeatedly stated a blunt rule of statutory construction: "The cardinal principle of statutory construction is to save and not to destroy." National Labor Relations Board v. Jones Laughlin Steel Corporation, 301 U.S. 1, 30; ChamplinRefining Co. v. Corporation Commission,286 U.S. 210, 234. Legislative intent is not to be found in an isolated sentence, but the enactment must be examined in its entirety and its parts reconciled and made operative so far as possible. Garbaty v. NorwalkJewish Center, Inc., 148 Conn. 376, 382. "Courts must assume that the legislature intended a reasonable and rational result and must, when possible, construe statutes accordingly." Masone v.Zoning Board, 148 Conn. 551, 556. *Page 404 
Article eighth, § 1, of the constitution of Connecticut provides as follows: "There shall always be free public elementary and secondary schools in the state. The general assembly shall implement this principle by appropriate legislation." In pursuance of this constitutional mandate, the General Assembly has enacted title 10, "Education" as part of the General Statutes of the state. In this title, the educational system of the state is defined and its statutory governing regulations are stated. The title outlines the respective obligations and duties of the state and local boards of education, the obligations of parents and children relating to compulsory school attendance, and the absolute right of children between specified ages to a free public elementary and secondary school education. Section 10-4 grants to the state board supervision and control of the educational interests of the state. This section authorizes the state board to prepare courses of studies and to publish such curriculum guides as it determines are necessary to assist local school districts to carry out their prescribed duties. Section 10-220, in conjunction with § 10-221, authorizes and directs local school boards to "implement the educational interests of the state as defined in section 4a, and provide such other educational activities as in their judgment will best serve the interests of the town," and to enforce public school attendance of children in accordance with provisions of § 10-184, subject only, as set forth in § 10-184, to the right of the substitution of instruction by parents or elsewhere in studies equivalent to those taught in the public schools. The state board has observed one of its mandates in circulating guides and guidelines for implementation in local schools of courses in physical instruction and health education. The Hamden school board, acting within its statutory authority and direction, has implemented the physical instruction and health education *Page 405 
courses and made attendance compulsory. No express or implied prohibition against compulsory attendance in the health education course studies can be found from a study of the statutes which regulate education on a state and municipal level. To the contrary, § 10-15 clearly makes mandatory the teaching of physical instruction and health education in local public schools.
The United States Supreme Court, in Brown v.Board of Education, 347 U.S. 483, 493, stated: "Compulsory school attendance laws and the great expenditures for education both demonstrate our recognition of the importance of education to our democratic society." Compulsory education has been known to exist in this country from the year 1642.
Count 2 alleges that § 10-220 is unconstitutional and violative of article third of the constitution of Connecticut, which vests legislative power in the General Assembly, and of the fourteenth amendment to the constitution of the United States, which guarantees due process and equal protection of the laws to all citizens of the state. The plaintiffs have claimed in this count, but have failed by citation of authority or otherwise to satisfy the court, that there exists either an unlawful delegation of legislative power to the Hamden board of education or that § 10-220 lacks adequate standards for implementation of the health course by the local board of education. Sections 10-220 and 10-221 provide for implementation by local judgments to meet local needs and are discussed under the court's consideration of count 1.
Since attendance in the courses is compulsory as to all students enrolled in the public schools in Hamden, without discrimination, there appears to be no proof of lack of either equal protection or due *Page 406 
process which could be violative of the fourteenth amendment to the constitution of the United States under the allegations of this count.
There appears in the record no legally sufficient evidence to support the further claim, as alleged in this and subsequent counts, that "irreparable harm" has or "will result to the mental and physical well-being of said children," who are parties plaintiff, or to any of them from compulsory attendance at instruction in the curriculum. In the absence of a clear showing of unconstitutionality by the plaintiffs, the court is bound by the presumptions of regularity in the performance of public duties and of the validity and constitutionality of § 10-220, the legislation which is in question. Amsel v. Brooks,141 Conn. 288, 294; State v. Miller, 126 Conn. 373,377.
The court is unable to concur that any provision of article third of the constitution of Connecticut prohibits delegation of educational supervision to a local board of education, or that it requires that standards be fixed by the state in the area of public school education beyond meeting the state's educational interests which are stated in § 10-4a. This section reads as follows: "Sec. 10-4a. EDUCATIONAL INTERESTS OF STATE IDENTIFIED. For purposes of sections10-4, 10-4b and 10-220, the educational interests of the state shall include, but not be limited to, the concern of the state (1) that each child shall have for the period prescribed in the general statutes equal opportunity to receive a suitable program of educational experiences; (2) that each school district shall finance at a reasonable level an educational program designed to achieve this end; and (3) that the mandates in the general statutes pertaining to education within the jurisdiction of the state board of education be implemented." *Page 407 
When a local board fails to implement the educational interests of the state in accordance with § 10-220 and as more particularly defined in § 10-4a, § 10-4b compels the state to conduct an inquiry and grants to the state board of education the power to take corrective steps. Local educational needs vary, and discretion in making judgments must necessarily be lodged in local boards in order to meet acknowledged varying needs.
The court finds no basis for injunctive relief in the allegations of this count.
Count 3 alleges that the town of Hamden is using public funds in violation of constitutional religious guarantees to teach a religious philosophy through employment of the curriculum in its public schools and, further, that it is infringing upon the right to the free exercise of religion by requiring attendance at classes wherein instruction and information are received which are contrary to the plaintiffs' religious beliefs. Such practice is claimed by the plaintiffs to be in violation of article first, § 3, of the Connecticut constitution and of the first and fourteenth amendments to the constitution of the United States.
From presiding at the trial and from the evidence, this court recognizes that the allegations of this count represent a principal motivation for the bringing of this action. The plaintiffs in this count allege a violation of both the prohibition of establishment of religion clause of the federal constitution and the right to freedom of exercise of religion clauses of the federal and Connecticut constitutions. The fourteenth amendment renders the state legislature as incompetent as Congress to enact laws respecting an establishment of religion or prohibiting the free exercise thereof.
"The constitutional inhibition of legislation on the subject of religion has a double aspect. On the one *Page 408 
hand, it forestalls compulsion by law of the acceptance of any creed or the practice of any form of worship. Freedom of conscience and freedom to adhere to such religious organizations or form of worship as the individual may choose cannot be restricted by law. On the other hand, it safeguards the free exercise of the chosen form of religion. Thus the [Fourteenth] Amendment embraces two concepts — freedom to believe and freedom to act. The first is absolute but, in the nature of things, the second cannot be. Conduct remains subject to regulation for the protection of society. The freedom to act must have appropriate definition to preserve the enforcement of that protection. In every case the power to regulate must be so exercised as not, in attaining a permissible end, unduly to infringe the protected freedom. No one would contest the proposition that a State may not, by statute, wholly deny the right to preach or to disseminate religious views. Plainly such a previous and absolute restraint would violate the terms of the guarantee. It is equally clear that a State may . . . safeguard the peace, good order and comfort of the community, without unconstitutionally invading the liberties protected by the Fourteenth Amendment." Cantwell v. Connecticut,310 U.S. 296, 303; Mayock v. Martin, 157 Conn. 56, 64.
The principal objection to the curriculum was heard at trial from parents of the Catholic religious faith. The basis for their opposition was, in part, that their religious beliefs imposed upon parents the primary obligations for education of their children and that, in the area of sexual education particularly, papal encyclicals and Vatican II directed parents to instruct their children in the home in sexual matters. The limits and basis of the parents' claimed privilege in this area are not clearly defined, either in the allegations of count 3 or from the evidence. The record discloses open and express objection *Page 409 
to "sex education," as such, but indicates approval of education in adjusting to the menstrual period and of certain other sex-related instruction appearing in the printed curriculum. Minimal evidence appears that the plaintiff parents had been complying with claimed religious pronouncements relating to sex education in the home. Although authorized by § 10-184 to exercise the alternatives of providing equivalent to public school education in the home or in private schools, including parochial schools, none of the plaintiff parents adopted either alternative or sincerely and seriously pursued their requests to have their children excused, by showing adequate cause, from attendance at classes in which the curriculum was taught.
The plaintiffs claim in this count that the practice of teaching the curriculum denies to them the religious freedoms guaranteed by the first amendment and that therefore the curriculum, as well as the statutory authority under which it is taught, is unconstitutional and void. The burden undertaken by the plaintiffs by making such claims is made greater than if the plaintiffs had claimed that individual rights were being invaded and that individually they seek exemption from the curriculum or some other specific form of alternative relief. The plaintiffs, few in number, have elected, instead, to undertake a sweeping constitutional indictment against the validity of a statewide educational, statutory authority. In adopting this course of action, the plaintiffs have lessened the weight to be given to their individual interests in balancing such interests against the interests of the public and the state. The few in this case attempt to invalidate courses of studies which presently are being attended by and authorized for the majority of the many who comprise the Hamden and state student body. No claim is made by the plaintiffs that this action is a class action on behalf *Page 410 
of all children in the Hamden schools, or of all children of certain religious persuasions. The parents of other children might not all possess the same sincere and conscientious beliefs as those claimed to be held by the plaintiffs. They may be of differing religious beliefs and faiths, and some might be atheists. It must be assumed that the commitments of those others to their respective beliefs, whether of an organized religion or not, may be as equally sincere and conscientious as those claimed to be held by the plaintiffs. Such other sincere and conscientious beliefs, though differing in content, may be subject to the same protection and guarantees under the first amendment as the claimed sincere and conscientious religious beliefs of the plaintiffs.
Several components of the free exercise balancing test to be considered by a court have been well stated as follows: "A thoroughgoing balancing test would measure three elements of the competing governmental interest: first, the importance of the secular value underlying the governmental regulation; second, the degree of proximity and necessity that the chosen regulatory means bears to the underlying value; and third, the impact that an exemption for religious reasons would have on the over-all regulatory program. This assessment of the state's interest would then have to be balanced against the claim for religious liberty, which would require calculation of two factors: first, the sincerity and importance of the religious practice for which special protection is claimed; and second, the degree to which governmental regulation interferes with that practice." Giannella, "Religious Liberty, Nonestablishment, and Doctrinal Development. Part 1. The Religious Liberty Guarantee," 80 Harv. L. Rev. 1381, 1390. This court recognizes the problems in employing the foregoing three factors in the absence of fixed rules of law. *Page 411 
The court is compelled to conclude under the facts in this case that there appears to be no denial of equal protection or substantive due process or equality under the fourteenth amendment, since the course is taught to all pupils, of mixed religious beliefs, and without discrimination. the state board of education is directed by statute to determine the educational policies of this state and to administer the public school system. There is no evidence that in authorizing the teaching of a course in health education the state acted either arbitrarily or unreasonably. There is equal protection of the laws, as the compulsory nature of the course and the alternatives offered under § 10-184 apply to all pupils equally. No evidence has been offered nor authority cited by the plaintiffs for their claim that the exclusive constitutional right to teach sexual matters exists only in the home and is therefore prohibited in the schools. Unless the plaintiffs claim that a secular program was a form of religion, there appears to be no proof, from evaluating the evidence in a light most favorably to the plaintiffs, that the teaching of the curriculum will in fact establish any religious concept or philosophy in the school system. In Everson
v. Board of Education, 330 U.S. 1, 15, the Supreme Court of the United States said that the establishment clause meant the following: "Neither a state nor the Federal Government can set up a church. Neither can pass laws which aid one religion, aid all religions, or prefer one religion over another." Further, it is clear from the cases that the first amendment does not mean that in every and all respects there shall be a "wall" and complete separation of church and state. It is apparent that this is not possible. Zorach v. Clauson, 343 U.S. 306, 312.
Since the third count challenges statutory authority, the constitutional validity of the legislation under which the school system is administered must *Page 412 
be further considered. In a recent United States Supreme Court case, the court held that the Arkansas antievolution statute, which made it a criminal offense to teach the theory that man evolved from a lower form of animal life, was an unconstitutional violation of the establishment and free exercise clauses of the first amendment. The court held that a state may not proscribe the teaching of a particular segment of knowledge solely because it conflicts with a particular doctrine of a particular religious group. Epperson v. Arkansas, 393 U.S. 97. Evidence in the present case indicates strong religious opposition to the subconcept appearing on page 60 of the curriculum which states: "Life comes from life and is nature's greatest miracle." The objection to this subconcept is based on insistence that it conflicts with sincere conscientious religious beliefs of the plaintiffs and that children should be taught, instead, that life is God given. The dangers of complying with this latter suggestion in the public schools would, without doubt, directly involve the schools in the teaching and establishment of a religious doctrine. The Epperson case emphasizes that the state may not either prefer or aid any religion or prohibit any theory being taught just because it may be deemed antagonistic to the principles or prohibitions of any one particular sect or dogma. The constitutional right of dissenters to substitute their parochial schools for public schools was sustained by the Supreme Court in Pierce v. Society of Sisters,268 U.S. 510. Under the Connecticut statutes, the stigma of coercion or compulsion is relieved by the permissive alternatives of equivalent instruction in the home or private schools. It is suggested that the alternatives, in cases found to be appropriate, might possibly be subsidized by federal or state aid under a constitutionally approved program, but the plaintiffs have not sought such relief, nor does this court have the power to decree it. *Page 413 
In Everson v. Board of Education, supra, where the state reimbursed parents of parochial school children for bus transportation, the United States Supreme Court held that the use of public funds for this purpose did not violate the first amendment religious clauses, but noted in Lemon v. Kurtzman,403 U.S. 602, 612: "Candor compels acknowledgment . . . that we can only dimly perceive the lines of demarcation in this extraordinarily sensitive area of constitutional law. . . . In the absence of precisely stated constitutional prohibitions, we must draw lines with reference to the three main evils against which the Establishment Clause was intended to afford protection: `sponsorship, financial support, and active involvement of the sovereign in religious activity.' Walz v. Tax Commission,397 U.S. 664, 668 . . . ." The cases also acknowledge that individual rights relating to establishment and freedom of religion frequently overlap and, as in this case, must both be considered.
In Tilton v. Richardson, 403 U.S. 672, the United States Supreme Court held that the religious clauses of the first amendment were not violated by public grants to certain Connecticut church-related colleges and universities for construction of buildings and facilities to be used exclusively for secular educational purposes. The court found that the purposes of the use of the public funds were religiously neutral and that there was no violation of the plaintiffs' rights under the establishment or free exercise clauses of the first amendment. Although compulsory payment of taxes in part financed the grants, the plaintiffs were unable to identify any coercion directed at the practice or exercise of their religious beliefs which would relieve them from the duty to pay taxes. Under our democratic system, citizens of every religious conviction are required to pay taxes. Walz v. Tax Commission, supra. *Page 414 
This court must concur in these conclusions in the Hamden case. Judicial concern that the legitimate secular objectives of the state education laws might possibly be violated by conscious design of one or more school teachers or school administrators does not warrant striking down the constitutional legislative authority of the course as unconstitutional. There is no evidence of any such affirmative acts. There is evidence of neutrality in the religious sphere and only a fear that instruction in the health curriculum could possibly conflict with individual beliefs. The court cannot assume that any religious activities seep into or permeate the secular purposes of the curriculum. Since the plaintiffs are unable satisfactorily to identify any coercion directed at the practice or exercise of religious beliefs, there can be no violation of the free exercise clause of the first amendment. There is evidence only that secular teaching might conflict with individual religious beliefs. See Board of Education v. Allen, 392 U.S. 236.
The governmental and public interests of the state in its educational system are of a kind and weight sufficient to relieve it from claims of violations of the first amendment solely on the ground that its wholly secular purposes could possibly clash with a religious belief of the plaintiffs in one or more areas of the curriculum. Unfair or unreasonable burdens do not appear which would or could violate the plaintiffs' religious guarantees.
If the compulsory education law is to withstand the plaintiffs' challenge, it must be either because the statutory authority in question does not interfere with a constitutional freedom to act in accordance with their sincere religious beliefs or because the burden on the free exercise of the plaintiffs' religious beliefs is justified by a "compelling state interest in the regulation of a subject within the *Page 415 
State's constitutional power to regulate . . . ."National Assn. for the Advancement of ColoredPeople v. Button, 371 U.S. 415, 438. The determination whether a law infringing religious liberty is justified requires the weighing of the burden on the free exercise of one's religion and the importance of the state's interest asserted in justification of the claimed infringement. Sherbert v. Verner, 374 U.S. 398;Board of Education v. Allen, supra.
It must be made clear that it is not the function of this court to evaluate a religious belief for ecclesiastical purposes. School District v. Schempp,374 U.S. 203; State v. Yoder, 49 Wis.2d 430. Also irrelevant is this court's opinion of the validity, reasonableness or merits of one's religious beliefs.State v. Yoder, supra.
This case primarily questions the right of the parents to regulate the education of their children in public schools as the parents' religious beliefs dictate, as against the justification of the state for regulating public education in a manner which might in some respects conflict with those beliefs. To permit such interference in the public school system by parents under the circumstances of this case could, unjustifiably, only tend to render a well-regulated public school system vulnerable to fragmentation whenever sincere, conscientious religious conflict is claimed. Cantwell v. Connecticut, 310 U.S. 296, 303, indicates quite clearly that this was not the intent of the guarantees under the first amendment, and that the state's interests must also be weighed and the public protected.
The courts have repeatedly held that unconstitutionality based on alleged violations of the religious clauses of the first amendment must be decided on the facts as they appear in each particular case. A study of the cases offers no clear and specific guidelines *Page 416 
or rules of law for assistance to the court. In the present case, the curriculum offered is primarily one of a public health nature. It has not been established that serious constitutional questions are involved, even though the parents claim that their rights of control of the child in religious scruples indicate to the contrary. Claims and questions similar to those raised in this count have been held by the federal courts to be inadequate to raise constitutional questions based on the first amendment. See Murdock v. Pennsylvania, 319 U.S. 105, 109;Cornwell v. State Board of Education, 314 F. Sup. 340,342, aff'd, 428 F.2d 471. The Murdock case concerned the balancing of the interests of the individual against the interests of the state. SeePrince v. Massachusetts, 321 U.S. 158.
The plaintiffs have failed to establish their rights to temporary injunctions based on the allegations of this count.
Count 4 alleges a constitutional violation of the plaintiffs' right of privacy as a result of teaching "sex education" and "family life and growth" as part of the curriculum. The only evidence offered by the plaintiffs reflected their fear of disclosures by a child in the curriculum classroom discussions of private family activities or conversations which have taken place in the home. Disclosures of this nature are not constitutionally protected and do not constitute an unlawful invasion of privacy under the fourth amendment to the federal constitution, which prohibits "unreasonable searches and seizures," nor under any other law known to the court. Injunctive relief is not warranted. Griswold v.Connecticut, 381 U.S. 479, 486; Travers v. Paton,261 F. Sup. 110, 112.
With respect to one's right to a temporary injunction, it must be emphasized that a temporary injunction *Page 417 
is not a matter of right but rather rests in the sound discretion of the court when adequate relief at law is not available. Bendell v. Johnson,153 Conn. 48, 51. The rights of the plaintiffs have not been made so clear that the court can at this time find without doubt that any constitutional or statutory right has been violated. It is unable to predict with any reasonable certainty that the plaintiffs will prevail finally on the merits. This latter consideration is an important factor in granting a temporary injunction. Torrington Drive-In Corporation
v. Local 402, 17 Conn. Sup. 416, 418. The court finds further that the granting of a temporary injunction for the period until the final determination of this case on the merits is not necessary in order to preserve the status quo. No risk of appreciable change in circumstances appears. The granting of temporary injunctions, on the other hand, would immediately and substantially alter the status quo and would result in administrative disruption of the school system of Hamden and of other municipalities which are presently teaching a similar health curriculum. Such action would unjustifiably do violence to the legislative authority which regulates the state's public school system.
The court, further, is unable to find that irreparable harm has or will result to the plaintiffs by its failure to grant the injunctions, or that the respective rights and interests of the plaintiffs will be prejudiced in any manner by the denial of the injunctions. See Olcott v. Pendleton, 128 Conn. 292.
The United States Supreme Court has stated: "Judicial interposition in the operation of the public school system of the Nation raises problems requiring care and restraint. . . . By and large, public education in our Nation is committed to the control of state and local authorities. Courts do not and cannot intervene in the resolution of conflicts *Page 418 
which arise in the daily operation of school systems and which do not directly and sharply implicate basic constitutional values." Epperson v. Arkansas,393 U.S. 97, 104.
The court reasserts that in this decision it has considered only the plaintiffs' rights to temporary injunctions. In arriving at its final decision on the merits, the court will fully consider the briefs of respective counsel, and the further claims of fact and law expected to be made in such briefs by the parties.
 For the foregoing reasons, the prayers for temporary injunctions are denied.