R & R OF CONNECTICUT, INC. *v.* MARY LEE STIEGLER
(3387)

DUPONT, C.P.J., HULL and SPALLONE, Js.

Argued April 10—decision released June 11, 1985

*Walter B. Schatz,* for the appellant (defendant).

*Howard Scheinblum,* for the appellee (plaintiff).

HULL, J. This case involves the narrow issue of whether a tenant's late notice of intention to renew a lease of commercial property should be excused on equitable principles. The plaintiff tenant sought an injunction to prohibit the defendant landlord from terminating the lease. The defendant, in her counterclaim, sought a declaratory judgment that the lease would expire on December 31, 1984, because of the plaintiff's failure to exercise its option to extend the lease. The defendant appeals from the judgment of the trial court, *A. Aronson, J.,* that the option to extend the lease has been properly exercised. We find error.

The plaintiff is a tenant of premises located at 172 Washington Street, Hartford, where it operates a supermarket. On June 13, 1979, the defendant leased the premises to Pedro Ortiz. On January 27, 1981, Ortiz assigned the lease to the plaintiff. The term of the lease was for five years and six months, from June 15, 1979, to December 31, 1984. Paragraph six of the lease gave the tenant an option to renew the lease for an additional five-year period which could only be exercised by sending written notice to the landlord at least twelve months prior to December 31, 1984, the termination date of the lease. Paragraph twenty-eight of the lease contained a right of first refusal giving the tenant the right to purchase the property first if the landlord received an offer to buy it.

On January 26, 1984, the defendant notified the plaintiff, in writing, that the lease would terminate on its expiration date of December 31, 1984, because of the plaintiff's failure to exercise the renewal option. On February 6, 1984, counsel for the plaintiff wrote to the defendant's agent advising him that Attorney Arnold E. Bayer, who died on December 14, 1983, had been the attorney for the plaintiff, and stating: "I believe it was probably his intention to send a letter of the clients' intention to renew under the terms of

said lease." The letter said the plaintiff wanted to exercise the option and asked the defendant for a reconsideration of the notice of termination. On March 23, 1983, the defendant had entered into an agreement to sell the premises for $425,000 to McDonald's Corporation for a McDonald's restaurant. The defendant's appraiser testified at trial that the fair market value of the property was only $225,000. The defendant was required to deliver the premises to the purchaser "free and clear of all tenancies and parties in possession." The purchase agreement contained no performance date but was dependent on the purchaser being able to close title when it purchased adjoining premises from another party and secured necessary zoning approval and other governmental permits. The plaintiff, upon notice of this agreement on February 24, 1984, did not exercise its right of first refusal on the property.

The court found the McDonald's offer to be a bona fide offer but that in reality it was an option to purchase under certain conditions of benefit to the optionee. It concluded that the loss to the landlord was speculative. It further found that the plaintiff had invested $40,000 and borrowed $390,000 from the small business administration to equip the supermarket. The removal of the fixtures and freezers and loss of business would cost the plaintiff $50,000. Further, there is no suitable location in the area for the plaintiff to relocate its neighborhood type store.

The court succinctly stated the issue to be whether a tenant can exercise late an option to renew a lease, by claiming that his attorney would have properly exercised the option for the tenant, but for the attorney's untimely death, and that equitable considerations will prevent a forfeiture of the lease. The court concluded that Bayer's death, the large monetary loss to be suffered by the plaintiff, the speculative loss which the

landlord might incur, and the customer loss from the neighborhood community justified equitable relief for the plaintiff.

The law in Connecticut on this issue is well settled. In *F. B. Fountain Co.* v. *Stein,* 97 Conn. 619, 118 A. 47 (1922), the plaintiff tenant was four days late in meeting a thirty day notice requirement for renewal of its lease, with the defendant landlord. The lease was for five years with a privilege of four five year renewals. The tenant had occupied the premises for twenty years prior to the time when it failed to give timely notice of intent to renew the lease. Both the tenant and its sublessees had erected buildings and made improvements on the site. The Supreme Court found error in the trial court's denial of equitable relief because of the court's exclusion of evidence of the value of good will of the plaintiff's business in this location. In so doing, the court stated the rule as follows: "We think the better rule to be that in cases of wilful or gross negligence in failing to fulfil a condition precedent of a lease, equity will never relieve. But in case of mere neglect in fulfilling a condition precedent of a lease, which does not fall within accident or mistake, equity will relieve when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the condition precedent of the lease." Id., 626–27.

The case of *Xanthakey* v. *Hayes,* 107 Conn. 459, 140 A. 808 (1928), strongly reaffirmed the *F. B. Fountain Co.* doctrine, in upholding the granting of an injunction ordering the landlord to execute a renewal of the lease despite untimely notice. The lease was for ten years with a five year extension on sixty days notice before the termination of the lease. Proper notice would have been on December 31, 1926. The tenants gave notice on January 3, 1927. The first day of neglect of

notice was a holiday, the second a Sunday, and on the following day, Monday, notice was given. The trial court found that without the renewal of the lease the tenants would lose about $4000 in improvements together with a substantial loss of good will to their business, that the lack of notice was due to mere forgetfulness, and that the landlord suffered no damages from the three day delay. The court then found that case "peculiarly one for the interposition of equity to prevent the consummation of unconscionable hardship to the plaintiffs." Id., 476.

In *Galvin* v. *Simons*, 128 Conn. 616, 25 A.2d 64 (1942), the Supreme Court ruled for the tenants who were awarded an injunction ordering the landlord to renew a lease. The lease ran from October 10, 1938, to April 30, 1941, with a right of renewal for one year based on ninety days notice before its expiration. The landlord told the tenants that she would record the lease but she did not do so. The tenants lost their copy of the lease and were under the impression that the right to renew could be exercised within sixty days of the expiration of the lease. The tenants had spent $500 on improvements and it would cost $100 to move. In finding that the trial court did not abuse its discretion in finding the notice sufficient, the Supreme Court noted (1) that there was no hint of loss to the lessor from the tenants' use of the property for another year; (2) that no space was available in Cheshire for the tenants' purposes; and (3) that thirteen days delay was a small percentage of the notice required.

The defendant argues that the rule of *F. B. Fountain Co.* v. *Stein,* supra, has been limited to three types of cases: (1) *F. B. Fountain Co.* v. *Stein,* supra, where the forfeiture of the buildings and improvements would unjustly enrich the landlord; (2) *Xanthakey* v. *Hayes,* supra, where the delay was very slight; and (3) *Galvin* v. *Simons,* supra, where the landlord misrepresented

that she would record the lease. The plaintiff claims that the facts of this case bring it within the rules enunciated in these cases.

The plaintiff claims: (1) that the delay was slight, pointing out that in *F. B. Fountain Co.* the tenant was thirty-seven days late on a thirty day notice and in *Galvin* the notice was thirteen days late on a ninety day renewal period; (2) that the plaintiff's delay was not wilful since the trial court found that the tenant may have been neglectful or forgetful but this was excused because of Bayer's death; and (3) that the plaintiff would suffer severe hardship if the lease were not renewed.

An analysis of the *F. B. Fountain Co.* criteria which must be met before equity will grant relief in cases such as this one reveals error in the court's judgment.

(1) *Whether the failure to give notice was mere neglect or gross or wilful negligence:* "As a general rule a party will not be given relief against a mistake induced by his own culpable negligence. . . . But the rule is not inflexible and in many cases relief may be granted although the mistake was not unmixed with some element of negligence, particularly where the other party has been in no way prejudiced." *F. B. Fountain Co.* v. *Stein,* supra, 626, quoting 21 Corpus Juris, Equity § 64, p. 88; see also *Geremia* v. *Boyarsky,* 107 Conn. 387, 391, 140 A. 749 (1928); *Petterson* v. *Weinstock,* 106 Conn. 436, 445, 138 A. 433 (1927). The court, in finding Bayer's death to be justification for equitable intervention, found only that the tenant "may have been forgetful or neglectful" in giving notice.

The court's finding fails to state whether the plaintiff's failure to give notice amounted to wilful or gross negligence which would not allow equitable relief or was merely neglect which would permit such relief under *F. B. Fountain Co.* The plaintiff's attorney's

statement that he *believed* it was *probably* Bayer's *intention* to send a renewal letter is completely devoid of any probative value. Sanctioning the acceptance of such "evidence" would open the courtroom door to myriad statements of interested lawyers favorable to their clients and lacking any factual basis.

(2) *Whether or not the delay has been slight:* The court made no specific finding in this regard but its reliance on *F. B. Fountain Co.* in granting relief makes such a finding implicit in the court's judgment. By comparison with *F. B. Fountain Co.* (four days late on a thirty day notice), *Xanthakey* (three days late on a sixty day notice), and *Galvin* (thirteen days late on a sixty day notice, applying a percentage factor) we conclude that the delay was slight.

(3) *Whether the loss to the lessor is small:* The propriety of considering the possible loss to the landlord of a more advantageous use of its property was not challenged in the trial court or in this court. Since such evidence is immaterial to the question involved in this case we do not consider the issue of error in the court's rejection of the evidence concerning the McDonald's agreement as "speculative." It was error for the court to consider the evidence in any event. The application of the *F. B. Fountain Co.* rule requires that the landlord be prejudiced by a change in position during the period between the time when notice was due and the time when it was given. In other words, the delay itself must have caused the loss. See *American Houses, Inc.* v. *Schneider,* 211 F.2d 881 (3d Cir. 1954); *Dugan* v. *Haige,* 54 So. 2d 201 (Fla. 1951); *J. N. A. Realty Corporation* v. *Cross Bay Chelsea, Inc.,* 42 N.Y.2d 392, 366 N.E.2d 1313, 397 N.Y.S.2d 958 (1977); *Sy Jack Realty Co.* v. *Pergament Syosset Corporation,* 27 N.Y.2d 449, 267 N.E.2d 462, 318 N.Y.S.2d 720 (1971); *Jones* v. *Gianferante,* 305 N.Y. 135, 111 N.E.2d 419 (1953). "[W]here an option is contained in a lease or other contract

involving an estate in land, some courts of equity, especially in recent years, have tended to treat the offer as not automatically lapsing on expiration of the option period, as for instance, in case of renewal of a long term lease, where to do so would involve substantial forfeiture and the lessor has not materially changed his position in reliance on the optionee's failure to exercise his option within the stated time. *[F. B.] Fountain [Co.]* v. *Stein,* [supra]; *Xanthakey* v. *Hayes,* [supra]; *Ammar* v. *Cohen,* 96 W. Va. 550, 123 SE 582 [1924]." 1 Williston, Contracts (3d Ed. Jaeger) § 76, pp. 248–49 n.4.

We do not reach the ultimate question of possible unconscionability if the plaintiff is not granted a renewal of the lease since a new trial is necessary to make a finding on the missing element of the *F. B. Fountain Co.* criteria, that is, the degree of the plaintiff's negligence in failing to give notice. If the court finds this necessary predicate to relief in the plaintiff's favor it will then be in a position to determine the ultimate equitable question involved.

There is error, the judgment is set aside and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other judges concurred.