[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
In this summary process action, the defendant-tenant L.A. East, Inc., raises the special defenses of estoppel and waiver and asks the court to exercise its equitable powers to avoid its alleged forfeiture of an option to purchase.
This dispute arises out of a 20 year lease executed on October 22, 1969 between the plaintiff and the defendant R W Steak Houses, Inc. The lease contained an option to purchase both the real and personal property comprising a restaurant operation on Main Street in East Haven. The tenant could have purchased the restaurant for $200,000 at any time during the term of the lease by giving the landlord written notice, by registered mail, no later than October 31, 1988. A payment of $25,000 by certified check was to be tendered with the notice.
It is undisputed that R W Steak Houses, Inc. never exercised this option and does not claim to have done so. Rather, this action is defended by and the claim regarding the exercising of the option is, made by the defendant L.A. East, Inc. L.A. East, Inc. claims to be the assignee of the lease from RW Steak Houses, Inc.
The first legal problem the defendant L.A. East, Inc. must overcome evolves out of its status as the alleged assignee under the lease of R W Steak Houses, Inc.
The lease requires that written permission of the lessor be obtained for any assignment of the lease by the original lessee, R W. Mr. Williams, a principal of L.A. East, Inc., testified that he did not give the plaintiff notice of the assignment nor did he obtain written permission for the assignment. The lease also required that in the event of an assignment, the assignee had to own at least a one-half interest in the business. There was no evidence offered that this condition was ever met by the defendant, L.A. East, Inc.
The defendant's sole claim as to the deficiency in the assignment process is that the parties dealt on an informal basis and the plaintiff has been accepting rent checks from the CT Page 941 assignee. It would ask the court to find from these two factors that the plaintiff tacitly acquiesced in the assignment.
On the first claim, there was no evidence of "informality," and the court will not conjecture as to what the defendant contemplates by use of this term. It is also unclear as to what dealings were "informal."
As for the acceptance of rent checks, this too is a tortured interpretation to place on a single phase of the relationship between the parties.
The defendant argues that the informality of their dealings and the acceptance of L.A. East, Inc. checks constituted a waiver of the lease conditions.
There is nothing to support the premise that the plaintiff agreed to the assignment and waived a notice and condition designed for his protection. For a waiver to occur, a party must relinquish a known right. Brauer v. Freccia, 159 Conn. 289
(1970). Lacking knowledge of the assignment and the ownership of the assignee, the plaintiff cannot be deemed to have waived the rights he had under the lease.
It is therefore the conclusion of the court that the option clause in question was given to R W Steak Houses, Inc., that there was no valid assignment of the lease as to this plaintiff, and L.A. East, Inc. has no right under the lease to exercise the option to purchase.
While the ruling above is determinative of the basic issue raised in this case, the court will address the other claims made by the defendant so that in the event of a successful appeal of this decision, there will be no need to remand for a determination of the court's intentions as to the subsequent claims.
Assuming L.A. East, Inc. has the right to exercise the option, the issue is whether the court should exercise its equitable powers to avoid a forfeiture. "Equity will intervene when the delay has been slight, the loss to the lessor small, and when not to grant relief would result in such hardship to the tenant as to make it unconscionable to enforce literally the conditions of the lease." Nicoli v. Frouge Corporation,171 Conn. 245, 247 (1976), other citations omitted.
The equitable doctrine against forfeiture is also available to prevent the inadvertent forfeiture of an option to purchase. Thompson v. Coe, 96 Conn. 644 (1921). CT Page 942
Under Connecticut law, the party seeking to invoke the court's equitable powers to avoid forfeiture has to meet the three pronged test, as recently set out by this court in Chart House, Inc. v. Marina Landing Development Corporation, 16 Conn. L. Trib. No. 20, p. 35 (May 14, 1990), derived from Fountain Co. v. Stein, 97 Conn. 619 (1922).
First, the delay must be the result of mere neglect and not gross or willful negligence. In this case, the failure to exercise the option was called to the attention of the plaintiff in January of 1989. No written notice was given, and no tender of the required $25,000 deposit was made at that time. Mr. Williams stated that in a phone conversation, the plaintiff said he'd get back to him. He also said he had another phone conversation about two weeks later and at that time, the plaintiff said he would consult with his accountant, his attorney, his son-in-law, or all three. Mr. Williams did not remember exactly the first conversation. Written notice was received by the plaintiff in July 1989.
The court cannot find that the delay in giving the actual notice and making a tender until July was mere neglect. It was gross or willful negligence to hold off for almost six more months.
Nor does the court subscribe to the defendant's theory that this alleged phone call in January was a valid exercise of the option. Taking Mr. Williams' version of the phone conversations at face value, there is nothing before the court to suggest that the plaintiff waived the written notice and tender.
The defendant relies on the court's decision in Chart House, Inc. v. Marina Landing Development Corporation, supra, as support for this tenant. In the Chart House case, the court found that the agent of the landlord actually led the tenant's agent to believe that the oral notice of intent to exercise the option was agreeable. That element is totally lacking in this case. This plaintiff has testified that he never told Mr. Williams he was extending the option period and that he never waived the lease requirements. In fact, he stated he didn't realize the option had expired at the time he received the first call. He had no recollection of a second call.
Therefore, the court finds that the first attempt to exercise the option was that dated June 29, 1989. This mailing was over 8 months late when received by the plaintiff in July.
This conclusion weakens the defendant's argument that the delay was slight — another finding the court must make to grant the defendant equitable relief. (The defendant had urged — that CT Page 943 the delay was only two and one-half months, ending with — the January phone call). Having found an 8 month delay in giving notice, the court concludes that the delay was not slight. The defendant had virtually all of the 19 years of a 20 year lease to give proper notice and missed by 8 months! If one looks at the delay in terms of its relation to the notice period, as was done in another Connecticut case (R R of Connecticut, Inc. v. Stiegler, 4 Conn. App. 240 (1985)), the 8 month delay for a 12 month notice cannot be characterized as "slight."
As to the third part of the Fountain Co. v. Stein test, the defendant must show his injury would be substantial and that of the plaintiff, slight.
The injury to the plaintiff would be in excess of $300,000, the difference between the sales price under the option clause and the fair market value of the property. The fair market value shortly after the lease expired was $575,000; at the time of trial it was estimated at $517,500 by the plaintiff's real estate appraiser. This could hardly be characterized as slight, so on this issue alone, the defendant has not met the requirement of the test.
However, it is also the court's conclusion that the defendant has failed to introduce evidence to support a finding that the defendant's injury would be substantial in the event of a forfeiture. Mr. Williams testified that he had invested about $100,000 in these premises, had no place else to go, and it would be "too expensive" to replace the present building.
The court heard no testimony from real estate brokers as to other sites, no builder offered an estimate for a new restaurant, and there was no elaboration or explanation of the $100,000 "invested" in this building.
The court also finds there is no basis for the claim made in the defendant's brief that: "In reliance on plaintiff's representations, the defendant continued to substantially improve the Premises."
 III "It is well settled that a buyer seeking specific performance has the burden of proving that he or she is ready, willing and able to purchase the premises, even when a seller refuses to participate in or attend a closing, or has failed to satisfy a condition of the contract."
CT Page 944
Romaniello v. Pensiero, 21 Conn. App. 57, 60 (1990), citations omitted.
This case also involved an option to purchase contained in a lease and presents a very similar factual situation to the instant matter. Thus, this defendant had the burden of proving that he was ready, willing and able to purchase the property at the $200,000 option figure.
Mr. Williams, a principal of the defendant L.A. East, Inc., testified that between October 31, 1988 and October 31, 1989, the defendant did not have $200,000 to effect the purchase. He further stated that the defendant had not applied for a mortgage in the amount of $150,000 as set forth in the lease (subparagraph 4).
The defendant offered no evidence to establish that he was ready, willing and able to purchase the premises between the above dates, which would of course include the January 1989 date on which he claims he exercised the option orally and the June 1989 date on which he sent a written notice.
CONCLUSION
Judgment may enter for the plaintiff to recover possession of the premises from the defendants.
ANTHONY V. DeMAYO, Judge.