[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
The defendant has moved for an ex parte order enjoining the execution of the judgment of possession rendered in the above-entitled matter.
This was a summary process action for nonpayment of rent commenced on July 15, 1997 by the plaintiff Housing Authority of the City of New Haven. On August 8, 1996 the court (Jones, J.) entered a judgment of possession in favor of the plaintiff and against the defendant with a stay of execution through March 31, 1999, pursuant to a stipulation of the parties. The stay was contingent on the defendant making use and occupancy to the plaintiff in the amount of $145.00 per month plus $130.86 per month toward an arrearage of $3,926.00, consisting of rent, use and occupancy payments and related charges and legal fees.
On September 11, 1996, the plaintiff filed an affidavit of noncompliance with the terms of the stipulated judgment, together with an application for an execution. See Practice Book § 387A.[1] 2-745 Practice Book § 387A does not require a hearing on the plaintiff's application for an execution of judgment. Housing Authority v. Melvin, 12 Conn. App. 711, 715,533 A.2d 1231 (1987), cert. denied, 207 Conn. 804, 540 A.2d 74
(1988). This application was followed by yet another "Stipulation CT Page 8246 For Further Stay of Execution" by the parties, dated February 28, 1997, pursuant to which this court modified the judgment on March 7, 1997.
On July 15, 1997, the plaintiff again filed an affidavit of noncompliance alleging that the defendant had failed to make the payments required by the 1997 modified judgment. On July 28, 1997, with the sheriff literally at her door, the defendant filed the instant application for an ex parte order.[2] Unable to locate an attorney for the plaintiff in order to afford the plaintiff some opportunity to be heard,[3] the court granted the application for an initial period of twenty-four hours. Counsel for both parties were summoned and were heard by the court the following day.
In her moving papers, the defendant claims that she was willing to make the payments to the plaintiff but that the plaintiff was unwilling to accept them. The defendant's moving papers are accompanied by a letter from a person whose title is designated "legal assistant" to the Housing Authority. As the court reads that document, it does not support the defendant's claim. The letter states that the plaintiff is willing to accept the defendant's monies, but only as use and occupancy, and that the defendant has an outstanding balance of $1,471.88. The letter states: "This amount must be paid in full or the Authority will proceed with eviction."
"In the . . . situation of a temporary injunction to preserve the status quo until the rights of the parties can be determined after a full hearing on the merits, we have said that the court is called upon to balance the results which may be caused to oneparty or the other, and if it appears that to deny or dissolve it may result in great harm to the plaintiff and little to the defendant, the court may well exercise its discretion in favor of granting or continuing it, unless indeed, it is very clear thatthe plaintiff is without legal right.' [Emphasis by the court]Olcott v. Pendleton, 128 Conn. 292, 295, 22 A.2d 633 (1941). This criterion necessarily requires consideration of the probable outcome of the litigation. Decisions of our trial courts have frequently referred to the burden of an applicant to show a reasonable degree of probability of success before a temporary injunction to preserve the status quo may be granted. ConnecticutState Medical Society v. Connecticut Medical Service, Inc.,29 Conn. Sup. 474, 477-78, 293 A.2d 794 (1971); Hopkins v. HamdenBoard of Education, 29 Conn. Sup. 397, 417, 289 A.2d 914 (1971); CT Page 8247Torrington Drive-In Corporation v. I.A.T.S.E.M.P.M.O. Local 402, A.F.L., 17 Conn. Sup. 416, 418 (1951) The need to show an irreparable loss unless the status quo is preserved has also been often mentioned. Covenant Radio Corporation v. Ten EightyCorporation, 35 Conn. Sup. 1, 3, 390 A.2d 949 (1977); Colchesterv. Reduction Associates, Inc., 34 Conn. Sup. 177, 185,382 A.2d 1333 (1977). The cases have also alluded to the harm likely to be sustained by other parties as well as the public from preservation of the status quo. Connecticut Assn. of ClinicalLaboratories v. Connecticut Blue Cross, Inc. 31 Conn. Sup. 110,121, 324 A.2d 288 (1973); Martino v. L. D. DeFelice Son, Inc.,16 Conn. Sup. 18, 19 (1948).
"These considerations involve essentially the application of familiar equitable principles in the context of adjusting the rights of the parties during the pendency of litigation until a final determination on the merits. See Stocker v. Waterbury,154 Conn. 446, 451, 226 A.2d 514 (1967); Sisters of St. JosephCorporation v. Atlas Sand, Gravel Stone Co., 120 Conn. 168,176-77, 180 A. 303 (1935).r Griffin Hospital v. Commission onHospitals, 196 Conn. 451, 457-458, 493 A.2d 229 (1985).
In the landlord-tenant context, these principles have been synthesized by our appellate courts into three cogent inquiries: (1) whether the defendant's default was mere neglect or gross or wilful negligence, (2) whether or not the delay has been slight, and (3) whether the loss to the lessor is small. R R ofConnecticut, Inc. v. Stiegler, 4 Conn. App. 240, 243-246,493 A.2d 293 (1985).
The defendant's claim for equitable intervention founders on the first and second tiers of this test. First: "Where an agreement secured is simply one for the payment of money, the power of a court of equity in cases properly requiring it will be exercised to relieve a party against forfeitures and penaltiesnot occasioned by his wilful neglect, upon the principle that one having a legal right shall not be permitted to avail himself of it for the purpose of injustice or oppression." (Emphasis added.)Mackey v. Dobrucki, 116 Conn. 666, 670, 166 A. 393 (1933). "A court of equity will apply the doctrine of clean hands to a tenant seeking such equitable relief; thus, a tenant whose breach was `willful' or `grossly negligent' will not be entitled to relief." Fellows v. Martin, 217 Conn. 57, 66, 584 A.2d 458
(1991). The defendant has made no showing with regard to why she accumulated such a debt to the plaintiff. CT Page 8248
Under the February 1997 stipulation, the defendant acknowledged an arrearage of rent, use and occupancy, late charges and attorney's fees of $2,652.98. She agreed to pay, and was ordered to make use and occupancy payments of $145.00 per month and "will pay $250.00 on 3/3/97, 3/14/97, 3/21/97 and 3/28/97 towards the arrearage commencing in March, 1997 [and] she will continue to pay $220.00 commencing in April and thereafter by the 2nd week of each month until the balance is paid in full." In the absence of any other explanation, the court can only infer that the plaintiff accumulated a further arrearage of $1,471.88 on this stipulation by wilful disregard or gross negligence. In such a circumstance, equitable intervention is inappropriate. Cf.Mobilia, Inc. v. Santos, 4 Conn. App. 128, 492 A.2d 544 (1985) (Where defendants wilfully withheld paying monthly payments provided in lease, "[t]he doctrine against forefeiture cannot be dilatorily invoked to eviscerate the statutory mandate of our summary process laws).
Similarly, this is not a case where the delay in payment has been slight. Compare Galvin v. Simons, 128 Conn. 616, 25 A.2d 64
(1942) (thirteen day delay); Xanthakey v. Hayes, 107 Conn. 459,140 A. 808 (1928) (three day delay); F.B. Fountain Co. v. Stein,97 Conn. 619, 118 A. 47 (1922) (four day delay); R R ofConnecticut, Inc. v. Stiegler, supra, 4 Conn. App. 241 (26 day delay). Again, the court can only infer from the amount of the arrearage accumulated on the February 1997 stipulation that the defendant delayed several months in making the required payments. That the defendant made a payment into court in the approximate amount of the arrearage at shortly after filing her application for ex parte relief cannot excuse her prior defaults, although it does establish the total period of her delay.
Where one tenant of public housing does not pay his or her fair share of the subsidized rent, every other taxpayer must shoulder an increased portion of the tax burden. While this may not amount to the kind of prejudicial loss to the landlord contemplated by the case law construing the third tier of the test recited supra; see RR of Connecticut, Inc v. Stiegler, supra, 4 Conn. App. 246, and cases cited therein; the absence of any showing that the defendant's failure to make the amount of payments required under the 1997 stipulated order was other than wilful and the length of the delay which must have given rise to an arrearage of $1,471.88, together with the defendant's prior history as reflected in the court's file — this is not her CT Page 8249 first, nor second, but at least the third in a series of defaults in her payment obligations to the plaintiff — militate against the intervention of equity.
The ex parte injunction ordered by the court on July 28, 1997 is hereby terminated. Suo motu, the orders a stay of execution until August 10, 1997 at 8:00pm.
BY THE COURT
Bruce L. LevinJudge of the Superior Court