[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
RULING ON APPLICATION FOR TEMPORARY INJUNCTION
The plaintiff is a non-profit health care center, commonly referred to as a clinic, which provides a wide range of health care services to members of the community. The center is located within Charter Oak Terrace, which is a housing project owned by the defendant Hartford Housing Authority (the "Authority"). The center is located within two buildings, which are connected. The majority of the facility is located within 81 Overlook Terrace; the remainder of the facility is located on the second floor of 91 Overlook Terrace. The premises at 81 Overlook Terrace have apparently been leased by the Authority to the center for a period of fifteen years, subject to renewal for another fifteen years. The premises at 91 Overlook Terrace, on the other hand, are currently subject to a month to month lease.[1]
For a period of approximately two to three years, the CT Page 8138 Authority has had plans to demolish the area in which the center is located and to build new housing units. The parties differ as to the extent to which the center has been included in the plans; for the purpose of the narrow issue of the temporary injunction, that difference is of little moment. In any event, the area bounded by Cotswold Street and Overlook Terrace ("sections A, B and C") has, with the exception of the center and several adjacent buildings, been evacuated and largely boarded up. The Authority plans to proceed with demolition, which includes the capping of utilities and the tearing up of roads within the area, virtually immediately.
As part of the demolition plan, the Authority or contractors hired by the Authority have erected a link fence around most of the area bounded by Cotswold Street and Overlook Terrace. The center has enjoyed access from Delta Street and O'Neill Drive through the former project; traffic proceeding by this route has traveled to a cul-de-sac which abuts the parking lot specifically servicing the center. Some people going to the center have parked on Overlook Terrace as well. The authority has planned to complete the fencing in, so that there would be no access to the center except from Overlook Drive; in an effort to accomplish that purpose, the authority last week connected a paved driveway area connecting Overlook Terrace to the center's parking lot. If the fencing were to be completed, it would also separate the cul-de-sac from the parking lot, thus reducing the available parking adjacent to the center.
The center presented an ex parte injunction on Friday, August 15, 1997, to me. I signed an order prohibiting further reduction of access through the Delta Street and O'Neill Drive areas, as well as pedestrian access, until further order of the court. Service was accomplished, and hearings were held on August 21, August 22 and August 25. The fundamental position of the center was that access is a necessary appurtenance to any lease. The Authority, while not necessarily disagreeing with that proposition in general terms, believes that access has not been seriously altered and would not be substantially altered if the fencing were to be completed.
One purpose of a temporary injunction is to preserve the status quo pending a final determination on the merits. Olcottv. Pendleton, 128 Conn. 292, 295 (1941). In order for a temporary injunction to issue, the plaintiff must show that protectable interests are at stake and that it is reasonably CT Page 8139 likely to prevail on the merits of the application for the permanent injunction. Hopkins v. Hamden Board of Education,29 Conn. Sup. 397, 417 (1971). In order to prevail on the merits, a plaintiff must show that there is no adequate remedy at law and that, in the absence of injunctive relief, he will suffer imminent and irreparable harm. Pet v. Department of HealthServices, 207 Conn. 346, 370 (1988). In deciding whether to grant an injunction, the competing interests are to be balanced, so that the relief is compatible with the equities of the case and so that the relief is not disproportionate to the injuries complained of Dukes v. Durante, 192 Conn. 207, 225 (1984).
It is clear from the evidence submitted, responsibly and efficiently, by both sides that the interests are squarely competing. The Authority presented persuasive evidence that maintaining the status quo, in the sense of keeping open the access currently available, would present a significant hardship in terms of viable demolition and public safety: there already has been significant burning and other vandalism. While it indeed may be true that the problem perhaps could have been avoided by more comprehensive and inclusive planning, involving the center, over the past several years, that does not detract from the potential dangers of keeping the area open to the public. On the other hand, the center is clearly entitled to reasonable access, both for its employees and its patients.[2] I do not find that the access provided by connecting the driveway from Overlook Terrace to the parking lot to be reasonable access. There was testimony that, at least for now, the access is sometimes blocked. The access is as little as 23 feet wide between buildings: I am not convinced that cars can pass each other safely, especially if snowbanks or other impediment should further narrow the passage. Ambulances sometimes enter and leave the premises, further requiring ample access. Finally, there was testimony that the center has used the cul-de-sac for on-site parking, and the Authority's current plan would eliminate that availability.
An improvement of access from Overlook Terrace would, however, seem to be reasonable; in argument, the Authority suggested that it would be possible to construct another paved access way on the north side of the center from Overlook Terrace. I have examined the map introduced as an exhibit, and I find that the minimum distance between buildings on that side is approximately 45 feet. If the current access on the south side is kept open, and the access on the north side is built, then I find CT Page 8140 that the facility will be substantially as accessible as it was prior to the fencing, though the access will not be identical. Similarly, though the plan will result in some expense to be borne by the Authority, it will be able to proceed with the demolition and reconstruction plan substantially as envisioned.
A temporary injunction, then, may enter as follows. The temporary restraining order now in effect is to remain in effect until a paved roadway or driveway is provided by the Authority between Overlook Terrace and the north side of 81 Overlook Terrace, connecting with the current parking lot. The paved way is to be at least 30 feet wide. Additionally, the fencing to the westerly side of the center shall be constructed in such a way that at least half of the existing cul-de-sac can be used for parking for the center. When the Authority believes that there has been compliance with these conditions, it shall so notify the center, and if there is no objection made within five days, the access to the center from other than Overlook Terrace may be eliminated.
Beach, J.